George Bernard NICHOLAS, Petitioner-Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.

No. 77–3506.

United States Court of Appeals, Ninth Circuit.

Feb. 2, 1979.

George Haverstick, San Diego, Cal., for petitioner-appellant.

Philip Wilens, Chief, Dept. of Justice, Washington, D. C., for respondent-appellee.

Before HUFSTEDLER and TANG, Circuit Judges, and TAKASUGI,* District Judge.

TAKASUGI, District Judge.

George Bernard Nicholas, the petitioner herein, is a forty-three year old native and citizen of the Bahamas. He has remained in this country at all times since his last entry in 1967, having since married a United States citizen. They have two children, both United States citizens.

On June 26, 1974, the United States Immigration and Naturalization Service[1] served an order to show cause and notice of hearing upon petitioner, charging him with deportability arising from a series of events commencing in the early 1950's.[2] 8 U.S.C. § 1251(a)(1).[3] The order was based upon his alleged violation of § 241(a)(17) of the Immigration and Nationality Act, in that he was excludable as an alien who had been arrested and deported at the time of his entry in 1967, and that he had not been granted consent to apply for readmission by the proper authority. 8 U.S.C. § 1182(a)(17).[4] During the deportation hearing, petitioner was further charged with deportability as an alien who had been convicted of a crime relating to drugs or narcotics, arising from a 1975 conviction of conspiracy to possess a controlled substance with the intent to distribute, in violation of 21 U.S.C. §§ 841, 843, and 846. 8 U.S.C. § 1251(a)(11).[5]

Prior to the hearing on the order to show cause, petitioner, through counsel, orally requested the District Director of the San Diego office of the INS to grant petitioner non-priority status, deferring action upon the deportation indefinitely. Immigration and Naturalization Service Operations Instruction[6] 103.1(a)(1)(ii). The request was verbally denied at that time.

During the pendency of the hearing, plaintiff sought relief in the form of a petition for permission to reapply for admission after deportation.[7] The Immigration Judge found petitioner deportable on both grounds charged and denied the petition for permission to re-apply.

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

1. Hereinafter denominated as "INS."

2. Petitioner was forced to leave the United States in 1954, after the issuance of an order for his deportation.

3. "Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who . . . at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry . . . ." 8 U.S.C. § 1251(a)(1).

4. "[T]he following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: . . . Aliens who have been arrested and deported, . . . unless prior to their embarkation or reembarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their applying or reapplying for admission . . . ." 8 U.S.C. § 1182(a)(17).

5. "Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who . . . at any time has been convicted of a violation of, or conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs . . . ." 8 U.S.C. § 1251(a)(11).

6. Hereinafter denominated as "O.I."

7. INS Immigration Form I–212.

Petitioner then went before the Board of Immigration Appeals, seeking discretionary relief from deportation under 8 U.S.C. § 1182(c), dismissal of the judgment under 8 C.F.R. § 242.8, and remand to allow petitioner to show eligibility for non-priority status and to present an application for political asylum. The Board dismissed petitioner's appeal.

■ If aggrieved by a final order of deportation by the Board of Immigration Appeals, the alien in a deportation proceeding has direct recourse to the Court of Appeals and an automatic stay of deportation under the statutory form of judicial review provided by 8 U.S.C. § 1105a(a). *Maldonado-Sandoval v. United States Immigration and Naturalization Service,* 518 F.2d 278, 280 n. 3 (9th Cir. 1975). Such a petition for review is now before us.

Petitioner challenges the final order of deportation on three grounds: (1) That the District Director's verbal denial of Nicholas' request for non-priority status represented such a departure from established patterns as to constitute a reversible abuse of discretion; (2) That petitioner is eligible for and should be granted discretionary relief from deportation pursuant to 8 U.S.C. § 1182(c); and (3) That the INS, by failing to provide the alien with copies of exhibits, violated 8 C.F.R. § 292.4(b), so as to deny him due process. We shall consider each of these contentions separately.

## A.

■ Petitioner first asks us to overrule the District Director's decision denying non-priority status [8] under O.I. 103.1(a)(1)(ii).[9] It is first necessary to determine the standard of review which this court must apply to the denial before the propriety of the District Director's decision may be examined. To do this, we analyze the Instruction's purpose and effect, taking into account its language and its prior treatment by the courts.

In urging us to adopt a standard with a wider scope of discretion, the INS points out that O.I. 103.1(a)(1)(ii) is an intra-agency administrative guideline, rather than a Statute passed by Congress. The INS feels that the granting of non-priority status, therefore, should be viewed as comparable to a prosecutor's discretion in deciding whether to initiate a criminal prosecution. As such, it is argued, for reversal, a showing must be made not only that an established pattern of treatment of others similarly situated was departed from without reason, but also that the decision was based upon impermissible considerations, such as race or religion. *See U. S. v. Ortega-Alvarez,* 506 F.2d 455 (2nd Cir. 1974); *U. S. v. Berrios,* 501 F.2d 1207 (2nd Cir. 1974); *U. S. v. Swanson,* 509 F.2d 1205 (8th Cir. 1975); *U. S. v. Bell,* 165 U.S.App.D.C. 146, 506 F.2d 207 (1974). No such impermissible considerations have been alleged.

A stricter standard is advocated by petitioner, who contends that the test utilized to review discretionary suspension of deportation under § 244(a) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a),

---

8. "Non-priority status" is also known as "deferred action category." The two terms are used interchangeably.

9. "(ii) *Deferred action.* In every case where the district director determines that adverse action would be unconscionable because of the existence of appealing humanitarian factors, he shall recommend consideration for deferred action category. His recommendation shall be made to the regional commissioner concerned on Form G–312, which shall be signed personally by the district director. Interim or biennial reviews should be conducted to determine whether approved cases be continued or removed from deferred action category.

"When determining whether a case should be recommended for deferred action category, consideration should include the following: (1) advanced or tender age; (2) many years' presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner the alien shall be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate." O.I. 103.-1(a)(1)(ii), p. 371 (12/31/75).

should be applied here. This would require us to find only that the decision of the District Director was arbitrary or capricious, so as to constitute an abuse of discretion. *Rassano v. INS*, 492 F.2d 220, 227 (7th Cir. 1974).

Resolution of this divergence of opinion lies in the nature of the Operations Instruction involved. We must determine whether its purpose and effect are more like those of an internal administrative convenience or those of a procedure conferring a substantive right. Our sister circuits appear to be divided in their interpretations.

The Fifth Circuit, expanding upon a footnote appearing in a Second Circuit decision, is clearly of the opinion that the Operations Instruction under scrutiny here is for the administrative convenience of the INS:

> "The Second Circuit has described non-priority status as an 'informal administrative stay of deportation' during which the deportation order remains suspended and may be executed at any time, and there is no effect on the substantive ruling by the INS. *Lennon v. Immigration & Naturalization Service*, 527 F.2d 187, 191 n. 5 (2nd Cir. 1975). An examination of the *Lennon* opinion suggests that unlike the other forms of relief enumerated in [8 C.F.R.] § 242.17, for which a respondent may apply, non-priority status is in the nature of a voluntary stay of the agency's mandate *pendente lite*, issued in large part for the convenience of the INS. Such a suspension is . . . inappropriate where, as here, deportability is conceded and only delay is desired . . . The decision to grant or withhold non-priority status therefore lies within the particular discretion of the INS, and we decline to hold that the agency has no power to create and employ such a category for its own administrative convenience without standardizing the category and allowing applications for inclusion in it."

*Soon Bok Yoon v. INS*, 538 F.2d 1211, 1213 (5th Cir. 1976).

Two recent Eighth Circuit cases, however, have taken an approach to the employment of non-priority status which appears directly at odds with the function attributed to the Operations Instruction by the Fifth Circuit. In *Vergel v. INS*, 536 F.2d 755 (8th Cir. 1976), and *David v. INS*, 548 F.2d 219 (8th Cir. 1977), the court upheld deportation orders, denying the petitioners relief, but stayed their mandate ninety days *to allow the aliens to apply to their District Directors* for "deferred action category," or non-priority status, under O.I. 103.1(a)(1)(ii). The Eighth Circuit felt the Operations Instruction to be appropriate and advisable *for the very purpose of delay*, in the form of an indefinite stay of deportation. *Vergel, supra*, 536 F.2d at 757–58; *David, supra*, 548 F.2d at 223. These recommendations were based upon the existence of compelling humanitarian factors and not upon administrative convenience.

Seeing such direct conflict between the two circuits [10] which have considered the granting of non-priority status, we turn to the Instruction's language. Three points become readily apparent upon examination: (1) The *sole* basis for granting relief is the presence of humanitarian factors; (2) The Instruction is directive in nature; and (3) The effect of such relief upon a deportation order is *to defer it indefinitely*.

Humanitarian factors, including five express criteria, are set forth as the only basis upon which the District Director is to weigh the propriety of non-priority status (deferred action category):

> "(ii) *Deferred action.* In every case where the district director determines that adverse action would be *unconscionable because of the existence of humanitarian factors*, he shall recommend consideration for deferred action category . . . .
>
> "When determining whether a case should be recommended for deferred action category, consideration should include the following: (1) advanced or

---

**10.** The reference to O.I. 103.1(a)(1)(ii) by the Second Circuit in *Lennon, supra*, 527 F.2d at 191 n. 5, consisted of a loose description of the status, which had been granted earlier by the INS, in a footnote to the factual background of the case.

tender age; (2) many years' presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral, or subversive activities or affiliations—recent conduct." O.I. 103.1(a)(1)(ii), *supra*. (Emphasis added).

It is obvious that this procedure exists out of consideration for the convenience of the petitioner, and not that of the INS. In this aspect, it far more closely resembles a substantive provision for relief than an internal procedural guideline.

The Instruction provides that, "In *every* case" where relief is appropriate, the District Director "*shall* recommend" deferred action category. O.I. 103.1(a)(1)(ii), *supra*. The directive nature of the language implies that the District Director is to consider each case which is brought to his attention fully, to satisfy the mandate that all cases for which relief is appropriate receive a recommendation for such relief. This does not ring of the almost limitless discretion of a prosecutor deciding whether to press charges. It sounds more in the nature of an administrative judge's duty to preserve a substantive right, by fully and fairly weighing all matters before him. As such, the scope of review should be more stringent.

Finally, the effect of granting non-priority status is to provide an *indefinite delay* in deportation:

> "If the district director's recommendation is approved by the regional commissioner the alien should be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate." O.I. 103.1(a)(1)(ii), *supra*.

11. "Interim or biennial reviews should be conducted to determine whether approved cases be continued or removed from deferred action category." O.I. 103.1(a)(1)(ii), *supra*.

12. "[T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and . . . is deportable;

Delay in deportation is expressly the remedy provided by the Instruction. It is the precise advantage to be gained by seeking non-priority status. Clearly, the Instruction, in this way, confers a substantive benefit upon the alien, rather than setting up an administrative convenience.

By further providing for periodic review of non-priority status,[11] the Instruction plainly contemplates a scheme where the status would preclude any deportation as long as the relevant humanitarian factors are still compelling, rather than being subject to termination at the convenience of the INS. We take a view of the granting of non-priority status which is more closely in accord with that of the Eighth Circuit.

Although it is true that, in the main, operations instructions are nothing more than intra-agency guidelines which create no substantive rights, *see Yan Wo Cheng v. Rinaldi*, 389 F.Supp. 583, 588–89 (D.N.J. 1975), O.I. 103.1(a)(1)(ii) differs from the norm in that its effect can be final and permanent, with the same force as that of a Congressional statute. It clearly and directly affects substantive rights—the ability of an individual subject to its provisions to continue residence in the United States. The purpose and effect of the Instruction are quite similar to those of 8 U.S.C. § 1254(a)(1).[12] It appears that the only major additional requirement for relief under the latter is "good moral character." It would be curious, to say the least, if, of two procedures with potentially identical impact upon the alien, there was qualitatively more discretion for the one without direct Congressional approval than for the Congressionally approved procedure.

■ This court feels that the wide discretion allowed by the Instruction, even if not

. . . has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien . . . ." 8 U.S.C. § 1254(a)(1).

explicitly created by Statute, should be consistent with the Congressionally approved scheme for review of the status of aliens in this country. It deserves a similar review. Accordingly, we hold that the decision of an INS District Director upon an application for non-priority status will stand unless it so departs from an established pattern of treatment of others similarly situated without reason, as to be arbitrary and capricious, and an abuse of discretion.

The burden upon one who endeavors to establish arbitrary or capricious action is quite heavy. As the traditional standard of review for discretionary decisions, it leaves the District Director with ample flexibility in exercising his judgment. In this instance, although petitioner has prevailed on the question of which standard of review to apply to his appeal, he nevertheless has failed to meet the great burden imposed by this standard.

■ In order to demonstrate that the decision upon petitioner's application for non-priority status deviated from an established pattern without reason, petitioner must first show what the norm is which allegedly has been violated. He has failed to do so. His evidence consists solely of statistics and conclusions from Wildes, *The Non-priority Program of the Immigration and Naturalization Service Goes Public*, 14 San Diego L.Rev. 42 (1976). Unfortunately, this article digested only the cases in which non-priority status was *approved*. Of course, this makes impossible any effort to glean criteria which are determinative of approval. We are merely able to draw the conclusion that the presence of certain factors, in themselves, are not determinative of denial.

Petitioner notes the limitations of his data in his brief, citing his limited finances as a barrier to presentation of more salient information. The INS has presented no figures of its own. Despite our appreciation for petitioner's predicament, we cannot escape the conclusion that he has failed to lay the groundwork for his challenge. Regardless of the presence of humanitarian factors which, taken alone, could build a compelling case for petitioner, his appeal on this ground must be denied.

### B.

■ Petitioner next contends that he is eligible for and should be granted discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act. 8 U.S.C. § 1182(c).[13] He further asserts that to distinguish between himself and an alien who has been "lawfully admitted for permanent resident status," as required by § 212(c), for relief, would be a denial of the Fourteenth Amendment's guarantee of equal protection under the law.

Petitioner's equal protection argument need not be reached in the present case. Relief under § 212(c) has been held in this Circuit to be unavailable to an alien facing deportation for conviction of a drug-related crime, pursuant to 8 U.S.C. § 1251(a)(11). *Arias-Uribe v. INS*, 466 F.2d 1198 (9th Cir. 1972); *Dunn v. INS*, 499 F.2d 856, 857–8 (9th Cir. 1974), *cert. denied*, 419 U.S. 1106, 95 S.Ct. 776, 42 L.Ed.2d 801 (1975). Because this is one of the two grounds upon which the present deportation order was premised, petitioner would be ineligible for relief under § 212(c) even in the event he was granted permanent resident status.

We, therefore, deny petitioner's appeal on this second ground and turn to his third and final objection.

### C.

Petitioner asserts that the INS, by failing to provide his attorney with copies of exhibits presented at the deportation hearing while his appeal to the Board of Immigration Appeals was pending, violated 8 C.F.R. § 292.4, and that such violation constituted

---

13. § 212(c) states, in pertinent part, that:

"Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of depor-

tation, and who are returning to a lawfully unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General  . . . .."

a denial of due process. We first turn to the claim that the requirements of 8 C.F.R. § 292.4 were breached.

On June 13, 1977, in preparation for Nicholas' appeal to the Board, his attorney sent a letter to the local INS office, requesting copies of exhibits used in petitioner's deportation hearing. The request was not honored.

8 C.F.R. § 292.4(b) provides that:

"During the time a case is pending, . . a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with § 103.10 of this chapter, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he may in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in § 103.10 of this chapter."

The record reveals no effort by petitioner, his attorney, or a representative on his behalf, to examine the documents sought at the INS office located in San Diego, where petitioner's counsel also maintains his offices. Whether extra copies of the evidence existed is not ascertainable from the record.

■ It appears that petitioner should have been furnished with a copy of the evidence presented at the hearing, upon his written request. The regulation does not require, as the INS implies, that petitioner attempt to examine the documents in an INS office prior to making a written request. Even if we assume that no extra copies of the evidence were available we find that petitioner sufficiently complied with 8 C.F.R. § 103.10 to receive copies at his own expense. Although counsel failed to properly mark the envelope "FREEDOM OF INFORMATION REQUEST," as re-

quired by the regulation, § 103.10 goes on to provide that "any request for information not marked and addressed as specified in this paragraph will be so marked by service personnel as soon as it is properly identified." 8 C.F.R. § 103.10(a)(2). We find that the letter, though not labelled properly, would be considered an information request by any reasonable person. The INS should have treated it as such. Because the letter otherwise conformed with the dictates of 8 C.F.R. § 103.10, we find the INS to be in violation of 8 C.F.R. § 292.4(b).

■ An alien within the United States is entitled to the guaranty of procedural due process embodied in the Fifth Amendment in a deportation hearing. *Yamataya v. Fisher*, 189 U.S. 86, 100–01, 23 S.Ct. 611, 614–615, 47 L.Ed. 721, 725–26 (1903); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–51, 70 S.Ct. 445, 453–54, 94 L.Ed. 616, 628–29 (1950). Constitutional due process requirements are satisfied in such an instance only by a full and fair hearing. *Ramirez v. INS*, 550 F.2d 560, 563 (9th Cir. 1977). The alien has been denied the full and fair hearing which due process provides only if the thing complained of causes the alien to suffer some prejudice.

Petitioner herein complains that the violation by the INS served to deny him "a meaningful opportunity to litigate the issues . . . on appeal." We now examine the record to decide whether the denial of petitioner's request for records did, in fact, deprive him of any meaningful opportunity.

At the time of the deportation hearing, counsel for Mr. Nicholas had the opportunity to examine all of the exhibits in controversy, which he did. Afterwards, counsel did receive a complete copy of the transcript of the proceedings, as well as the decision of the immigration judge. Although a need for copies of the evidence presented at the hearing was felt by petitioner and his attorney, and they were aware of 8 C.F.R. § 292.4(b), they failed to make any attempt to visit the INS office in San Diego to examine the evidence pursu-

ant to the Regulation. Moreover, they failed to do so despite counsel's location in the same city and an ongoing correspondence manifesting familiarity with the address of the San Diego INS.

The alien was not denied a meaningful opportunity to litigate the issues presented on appeal. The bulk of data relevant to his appeal was in his possession. The material denied still was available with little effort from a convenient, albeit non-cooperative, source. The alien has not shown that the refusal of the INS to send petitioner copies of the evidence requested served to prejudice his appeal. Nicholas and his counsel were accorded a full and fair hearing. Although it is not an exemplary model, we find the sequence of events described to fall within the bounds of fairness necessary to comport with the Fifth Amendment's command to provide procedural due process.

In accordance with the discussion above, petitioner's appeal is, on each ground presented, DENIED.