Petition of Rodrigo GUERRERO–MO-
RALES for Writ of Habeas Corpus.

Civ. No. 4–81–89.

United States District Court,
D. Minnesota,
Fourth Division.

May 7, 1981.

Jerome B. Ingber, Minneapolis, Minn., for petitioner.

Deborah S. Kleinman, Asst. U. S. Atty., Minneapolis, Minn., for respondent.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This is a petition for writ of habeas corpus. The petitioner, Rodrigo Guerrero-Morales, is a citizen of Colombia who has been ordered deported from the United States. Based upon an agreement between the parties, this court ordered on March 2, 1981, that the Immigration and Naturalization Service (INS) was restrained from executing any warrant of deportation pending determination of these proceedings. Hearing was held on the petition for writ of habeas corpus on April 13, 1981.

### I. *Factual Background*

The petitioner was convicted in 1977 in Aruba, Netherlands Antilles, for possession of cocaine and served a sixteen month sentence. Subsequently, in July, 1978, he entered the United States without being inspected by the INS as required by statute. He was apprehended in June, 1979, and a deportation hearing was scheduled for August 23, 1979. After his arrest and before the hearing, the petitioner married a United States citizen. At the hearing, the immigration judge found the petitioner deportable and ordered that he be deported to Colombia.

In September, 1979, the United States Attorney's Office informed the INS that the petitioner was an essential witness in a federal narcotics prosecution and requested an extension of the petitioner's departure date. The departure date was extended several times because of the pending drug prosecution, ultimately to June 1, 1980. On June 13, 1980, the United States Attorney's Office informed the INS that the petitioner's testimony was no longer needed. The departure date, however, was again extended to September 16, 1980, because of the birth of petitioner's son.

On September 15, 1980, the petitioner's attorney requested that the petitioner be

considered for deferred action status. On October 1, 1980, the district director of the INS informed petitioner's counsel by letter that he declined to recommend deferred action status and ordered the petitioner to report for deportation on October 14, 1980. On October 14, 1980, petitioner's attorney again requested that his client be considered for deferred action status, and the district director agreed to allow petitioner an opportunity to present additional information to support his request. Subsequently, by letter dated January 22, 1981, the district director declined to recommend petitioner for deferred action status and ordered that he report for deportation in thirty days. The petitioner then filed this petition for writ of habeas corpus.

## II. *Discussion*

The petitioner urges that the district director's refusal to recommend deferred action status reflects his misunderstanding of INS Operations Instruction 103.1(a)(1)(ii) and constitutes an abuse of discretion. At the time of petitioner's request for consideration of deferred action status, the Operations Instruction provided in pertinent part:

In every case where the district director determines that adverse action would be unconscionable or result in undue hardship because of the existence of appealing humanitarian factors, he shall recommend consideration for deferred action category...

When determining whether a case should be recommended for deferred action category, consideration should include but not be limited to the following: (1) advanced or tender age; (2) number of years presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner the alien shall be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States

has been deferred indefinitely, whichever is appropriate....

The appropriate standard of review for this court is whether or not the district director abused his discretion in declining to recommend the petitioner for deferred action status. The Ninth Circuit has found that abuse of discretion is the standard, rather than a more narrow scope of review comparable to that employed when reviewing a prosecutor's discretion to initiate a criminal prosecution. *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979). The Operations Instruction "far more closely resembles a substantive provision for relief than an internal procedural guideline." 590 F.2d at 807. The *Nicholas* court rejected the Fifth Circuit's position that the Operations Instruction exists only for the administrative convenience of the INS, adopting the approach of the Eighth Circuit focusing upon "the existence of compelling humanitarian factors and not upon administrative convenience." 590 F.2d at 806.

The Eighth Circuit has indicated that it regards the Operations Instruction as a substantive provision. *David v. INS*, 548 F.2d 219 (8th Cir. 1977); *Vergel v. INS*, 536 F.2d 755 (8th Cir. 1976). In these cases, the court upheld orders of deportation, but recognizing the existence of humanitarian factors, stayed its mandate ninety days to allow the petitioners to apply under the Operations Instruction for deferred action status.

■ A review of the district director's January 22, 1981 letter in which he declined to recommend deferred action status reveals that he attached great significance to the petitioner's narcotics conviction prior to his arrival in this country. Under the immigration laws, a prior conviction is clearly a relevant factor to consider when deciding whether to permit an alien to remain in the United States.

■ In reviewing administrative action under an abuse of discretion standard, however, the court should not look solely to the evidence which supports the administrative finding, but "must take into account what-

ever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). *See also Bastidas v. INS,* 609 F.2d 101, 104 (3d Cir. 1979). The record in this case contains many factors which support a finding that deportation would result in undue hardship to the petitioner and his family and which consequently detract from the weight of the negative factors upon which the district director relied in finding that a recommendation for deferred action status was not appropriate.

■ The court notes the existence of many appealing humanitarian factors in this record. The petitioner's family situation, a factor which must be considered under the terms of the Operations Instruction on a request for deferred action status, is particularly significant. In July, 1979, the petitioner was married to a United States citizen. Their infant son, born in the summer of 1980 and also a United States citizen, has a congenital heart defect which may require close medical supervision. The record indicates that the petitioner is a devoted husband and father and provides financial support to his family by working steadily in remodeling and construction.[1]

The family unit is protected in our system. *See, e. g., Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The forced separation of a family, particularly one in which the marital bonds appear to be strong, demands careful scrutiny. *See Bastidas v. INS,* 609 F.2d 101, 105 (3d Cir. 1979) (court held that "where a father expresses deep affection for his child and where the record demonstrates that his actions are consistent with and supportive of his expression of affection, a finding of no extreme hardship will not be affirmed by this court unless the reasons for such a finding are made clear").

The petitioner's deportation would most certainly result in the separation of his family, which is now intact and self-sufficient. The petitioner's wife, apparently a native of the United States, does not speak Spanish. Furthermore, the medical supervision which may be necessary because of their infant son's heart condition, although clearly available in the United States, may not be so available in Colombia. The record indicates that the wife and child would have to obtain public assistance if petitioner were deported.

The positive aspects of the petitioner's cooperation with the federal drug prosecution should also not be overlooked. He exposed himself to the dangers inherent in any such cooperation and aided the government in obtaining a conviction. Although the district director's January 22, 1981 letter seems to imply that petitioner's cooperation in the prosecution suggests his possible criminal involvement in this country, nothing in the record substantiates that or indicates that the investigating officials considered him so involved.[2] The decision on an application for deferred action status should, of course, be based on the record and not on inferences lacking clear support.

On the record before the court, it is unclear whether the district director adequately considered all the factors brought to his attention when he declined to recommend the petitioner for deferred action status. The district director's letter of October 1, 1980, in which he initially declined to recommend deferred action status, suggests that he may have misinterpreted the Operations Instruction and the nature of the relief requested. In that letter the district director stated that "Mr. Guerrero has been afforded all possible discretionary relief available to him. Thus your request for deferred action status is hereby denied." The function of the Operations Instruction,

1. In letters attached to the petition for writ of habeas corpus, the petitioner's employers praise his work, indicating that he is ambitious and conscientious.

2. The district director also concluded that the petitioner's action in joining his brother "does

not reflect a strong desire to disassociate himself from the criminal element." One could also conclude that the petitioner's association with his brother occurred because of the familial tie and because he was new to this country.

as interpreted by the Eighth and Ninth Circuits and discussed previously, is to provide an indefinite delay of deportation to prevent undue hardship. The remedy "confers a substantive benefit upon the alien," *Nicholas v. INS*, 590 F.2d 802, 807 (9th Cir. 1979), and provides for the possibility of discretionary relief. Perhaps the district director gave further thought to the nature of the request since he later agreed to allow the petitioner to submit additional material to support it. However, his decision not to recommend deferred action status remained the same.

Upon careful review, the court is of the opinion that there is a substantial basis in the record upon which the district director could place the petitioner in the deferred action category and thus allow him to remain in this country on humanitarian grounds. In the circumstances presented, it is appropriate to remand this matter to the district director to permit him to reconsider the application for deferred action status and to determine whether, in the exercise of his discretion, he can grant relief to the petitioner. *See David v. INS*, 548 F.2d 219 (8th Cir. 1977); *Vergel v. INS*, 536 F.2d 755 (8th Cir. 1976); *United States v. McAllister*, 395 F.2d 852 (3d Cir. 1968); *Pimental-Navarro v. Del Guercio*, 256 F.2d 877 (8th Cir. 1958).

ORDER

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. This matter is remanded to the district director of the Immigration and Naturalization Service so that he may reconsider the petitioner's request for deferred action status.

2. The court's previous order restraining the Immigration and Naturalization Service from executing any warrant of deportation shall continue in effect pending the district director's reconsideration and further order of this court.