**Desiderio VELASCO–GUTIERREZ, Maria De Lourdes Rodriguez De Velasco, and Juan Carlos Velasco-Rodriguez by Desiderio Velasco-Gutierrez, his father and next friend, Plaintiffs-Appellees,**

v.

**David CROSSLAND, Acting Director of the Immigration and Naturalization Service, United States Department of Justice; and Robert Godshall, District Director of the Immigration and Naturalization Service, Defendants-Appellants.**

No. 82–1682.

United States Court of Appeals, Tenth Circuit.

April 24, 1984.

James W. Winchester, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., with him on brief), Denver, Colo., for defendants-appellants.

Susan E. Perry, Denver, Colo., for plaintiffs-appellees.

Before McWILLIAMS, BREITENSTEIN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiffs Desiderio Velasco-Gutierrez, Maria de Lourdes Rodriguez de Velasco, and Juan Carlos Velasco-Rodriguez (the Velascos) brought this action for injunctive and declaratory relief against officials of the United States Immigration and Naturalization Service (INS or the Service), alleging that the Service's refusal to consider the Velascos for "deferred action" concerning their departure from the United States violates the due process clause of the Fifth Amendment and the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (1982). On cross motions for summary judgment, the district court held for the Velascos and ordered the INS District Director to consider their application for deferred action status in a manner that comports with due process. We reverse.

I.

The facts pertinent to this appeal are not disputed. The Velascos are Mexican citizens who illegally entered the United States at El Paso, Texas in 1976. The child, Juan, was two and a half years old at the time and severely retarded, with a history of serious medical problems. In 1977, the INS identified the Velascos as illegal aliens and granted them "voluntary departure" in lieu of deportation. *See* 8 U.S.C. § 1254(c) (1982). In July 1977, the Velascos requested that the INS grant them "deferred action" status due to Juan's condition and his need for proper treatment. As will be discussed more fully below, the granting of "deferred action" or "nonpriority" status is essentially an administrative decision by the Service not to deport an otherwise deportable alien.

While this request was pending, the Velascos were given a series of extensions of voluntary departure. In March 1979, the Service determined that Juan could obtain adequate medical treatment in Mexico, and informed the Velascos that no further extensions would be granted. Upon being so notified, the Velascos requested a deportation hearing, which ultimately was held October 10, 1980.

In the months preceding the hearing, the Velascos repeatedly requested consideration for deferred action based on Juan's need for continued care and education at a Colorado treatment facility. The INS refused to act on the Velascos' request, maintaining that deferred action was an "in-house status initiated by the Service," and not a category for which one could apply. Rec., vol. I, at 32, 46.

At their deportation hearing, the Velascos confessed deportability and again elected voluntary departure, promising to leave the United States within six months. Shortly after the hearing, however, they brought this suit in federal district court seeking, inter alia, an injunction against deportation until the INS considered their request for deferred action and established uniform standards for the evaluation of such requests. After hearing argument, the district court granted the Velascos' motion for summary judgment and ordered the INS to consider their application for deferred action status "in a manner which comports with due process of law." Rec., vol. III, at 7. The court further ordered that any deportation be stayed until such consideration had occurred.[1] This appeal followed.

## II.

Deferred action status, also known as nonpriority status, has been described as "an informal administrative stay of deportation ... having no effect on an alien's adjudication as deportable but potentially leading to an extended stay in this country." *Wan Chung Wen v. Ferro*, 543 F.Supp. 1016, 1017 (W.D.N.Y.1982). It is, in essence, a "reprieve" from deportation—an administrative decision by the INS to take no action against an otherwise deportable alien. *See Pasquini v. Morris*, 700 F.2d 658, 661 (11th Cir.1983); Appellant's Brief at 4. On appeal, we must determine whether the requirements of procedural due process apply to the INS decision making process regarding the grant or denial of deferred action status.

1. The district court also granted the Velascos' motion for attorney's fees, a ruling which the Service contests on this appeal. In view of our holding on the merits of the case, we need not reach this second issue.

2. The INS amended O.I. 103.1(a)(1)(ii) in July 1981 to make clear the discretionary nature of deferred action relief. The amended instruction reads in relevant part:

"(ii) *Deferred action.* The district director may, in his discretion, recommend consideration of deferred action, an act of administrative choice to give some cases lower priority

The Velascos' claim to due process protection is grounded on INS Operations Instruction (O.I.) 103.1(a)(1)(ii), which, at the time this action was brought, provided:

"(ii) *Deferred action.* In every case where the district director determines that adverse action would be unconscionable or result in undue hardship because of the existence of appealing humanitarian factors, he shall recommend consideration for deferred action category. His recommendation shall be made to the regional commissioner concerned on Form G-312, which shall be signed personally by the district director and the basis for his recommendation shall be set forth therein specifically. Interim or biennial reviews should be conducted to determine whether approved cases be continued or removed from deferred action category.

"When determining whether a case should be recommended for deferred action category, consideration should include but not be limited to the following: (1) advanced or tender age; (2) number of years presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner the alien shall be notified that no action will be taken by the Service to disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate."[2]

and in no way an entitlement, in appropriate cases. (Revised)
The deferred action category recognizes that the Service has limited enforcement resources and that every attempt should be made administratively to utilize these resources in a manner which will achieve the greatest impact under the immigration laws."
Rec., vol. I, at 99. The district court ruled that the Instruction in effect at the time the Velascos requested consideration for deferred action status governs this case. This ruling is not challenged on appeal. Accordingly, we restrict our

Rec., vol. I, at 101. The Velascos contend that this Instruction, with its mandatory language and prescribed criteria and procedure, "creates a protectible expectation that Plaintiffs would be fully and fairly considered for deferred action status ...." Appellees' Brief at 5, 7. They argue that the INS' failure even to consider their request for deferred action deprived them of due process and was thus impermissible under the Fifth Amendment.

In response, the Service points out that, unlike "voluntary departure" or "stay of deportation," which are provided for by statute and regulation, see 8 U.S.C. § 1254 (1982); 8 C.F.R. §§ 244.2, 243.4 (1983), deferred action is "a non-statutory form of relief from deportation which INS grants in its discretion in a certain and very limited class of cases." Appellant's Brief at 7. The service characterizes its decision making process with regard to deferred action as an exercise of prosecutorial discretion, and argues that O.I. 103.1(a)(1)(ii) is an "intra-agency guideline" which was intended merely to regularize INS internal procedure, not to confer a substantive right. Id. at 10–12.

Three circuit courts have examined the INS practice of granting nonpriority status in some cases and have reached differing conclusions as to the effect of the practice. Although not specifically addressing the Operations Instruction, the Fifth Circuit in Soon Bok Yoon v. INS, 538 F.2d 1211 (5th Cir.1976), described nonpriority status as "in the nature of a voluntary stay of the agency's mandate pendente lite, issued in large part for the convenience of the INS." Id. at 1213. Because the court did not view deferred action as a form of relief for which one could apply, it found no error in the immigration judge's failure to apprise the plaintiff of its availability. The court determined that "[t]he decision to grant or withhold nonpriority status ... lies within the particular discretion of the INS," and thus the Service could "create and employ such a category for its own administrative convenience without standardizing the category and allowing applications for inclusion in it." Id.

The Ninth Circuit rejected this conclusion in Nicholas v. INS, 590 F.2d 802 (9th Cir. 1979), declaring it "obvious" that the deferred action procedure established in O.I. 103.1(a)(1)(ii) "exists out of consideration for the convenience of the petitioner, and not that of the INS." Id. at 807. Emphasizing the mandatory language of the Instruction, the court observed that it more closely resembled a substantive provision for relief than an intra-agency administrative guideline:

"The Instruction provides that, 'In every case' where relief is appropriate, the District Director 'shall recommend' deferred action category.... The directive nature of the language implies that the District Director is to consider each case which is brought to his attention fully, to satisfy the mandate that all cases for which relief is appropriate receive a recommendation for such relief. This does not ring of the almost limitless discretion of a prosecutor deciding whether to press charges. It sounds more in the nature of an administrative judge's duty to preserve a substantive right, by fully and fairly weighing all matters before him."

Id. (emphasis in original).

Most recently, the Eleventh Circuit appears to have aligned itself with the Fifth Circuit by holding that "[t]he internal operating procedures of the INS are for the administrative convenience of the INS only." Pasquini, 700 F.2d at 662. The court criticized the Ninth Circuit's decision in Nicholas, claiming that it was "not made with an acknowledgement of the traditional status given to internal instructions, distinct from regulations." Id. See also Dong Sik Kwon v. INS, 646 F.2d 909, 918–19 (5th Cir.1981) (operations instructions confer no substantive rights); Wan Chung Wen, 543 F.Supp. at 1019 (no colorable liberty or property interest in deferred action category); Loera v. Nutis, 543 F.Supp. 249, 249–50 (E.D.Mo.1982) (grant

analysis to O.I. 103.1(a)(1)(ii) as it existed prior to July 1981.

or denial of deferred action status is matter of administrative discretion). *But see In re Guerrero-Morales,* 512 F.Supp. 1328, 1329 (D.Minn.1981) (following *Nicholas* ).

### III.

■ Although a decision concerning deportation certainly affects the liberty of a potential deportee, *see Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945), not every grievous loss visited upon a person by the government is sufficient to invoke constitutional protections. *Jago v. Van Curen,* 454 U.S. 14, 17, 102 S.Ct. 31, 33–34, 70 L.Ed.2d 13 (1981); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Despite the Fifth Amendment's broad guarantee that no person shall be deprived of life, liberty, or property without due process of law, the Supreme Court has cautioned that "only a limited range of interests fall within this provision." *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Our initial inquiry, therefore, is whether the district director's refusal to consider the Velascos for deferred action implicated a liberty interest within the meaning of the due process clause. *See Meachum,* 427 U.S. at 223–24, 96 S.Ct. at 2537–38; *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

■ Such an interest may be created by the government through statute, regulation, or otherwise, or it may arise directly from the due process clause. *See Hewitt,* 103 S.Ct. at 869; *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465–66, 101 S.Ct. 2460, 2464–65, 69 L.Ed.2d 158 (1981). In the present case, the Velascos do not contend that the Fifth Amendment itself creates any protectible interest in deferred action. Instead, they base their claim on O.I. 103.1(a)(1)(ii). The issue is thus a narrow one: whether O.I. 103.-1(a)(1)(ii) creates a constitutionally cognizable liberty interest in deferred action status

so as to require the INS to consider applications for deferred action in a manner that comports with due process of law.

■ In a case handed down after the district court opinion in this case, the Supreme Court stated that the government creates a protected liberty interest by placing "substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). To establish such an interest, one must show that "particularized standards or criteria guide the [government's] decisionmakers," *id.* (quoting *Connecticut Board of Pardons,* 452 U.S. at 467, 101 S.Ct. at 2465 (Brennan, J., concurring)), thereby creating a "justifiable expectation" that the desired relief will be obtained if those standards or criteria are met. *See id.* 103 S.Ct. at 1745; *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). Conversely, "[i]f the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,'" the government has not created a constitutionally protectible liberty interest. *Olim,* 103 S.Ct. at 1747 (quoting *Connecticut Board of Pardons,* 452 U.S. at 467, 101 S.Ct. at 2465 (Brennan, J., concurring)).

These principles are well illustrated by a line of Supreme Court decisions that have arisen in the prison setting. In *Greenholtz,* the Court examined a Nebraska parole statute and held that it created a protected liberty interest. The Court emphasized the "unique structure and language" of the statute, which provided that the Board of Parole "shall" order the release of an eligible prisoner "unless" it determined that one or more of four specified reasons for deferral was applicable. 442 U.S. at 11–12, 99 S.Ct. at 2106. The statute also listed a number of factors that the Board was required to consider in making its decision. *Id.* at 11 n. 5, 16–18, 99 S.Ct. at 2106 n. 5, 2108–09. The Court concluded

that the statute created an "expectancy of release" that was "entitled to some measure of constitutional protection." *Id.* at 12, 99 S.Ct. at 2106. *See also Hewitt,* 103 S.Ct. at 871 (statute's "explicitly mandatory language" and "specific substantive predicates" created protected liberty interest).

In contrast to the Nebraska parole statute examined in *Greenholtz,* the Connecticut commutation statute at issue in *Connecticut Board of Pardons* contained no prescribed criteria or mandate, but merely conferred broad discretionary authority on the Board of Pardons to commute sentences and grant pardons. 452 U.S. at 460, 101 S.Ct. at 2462. Comparing the two laws, the Court held that the Connecticut statute, "having no definitions, no criteria, and no mandated 'shalls,' create[d] no analogous duty or constitutional entitlement." *Id.* at 466, 101 S.Ct. at 2465. For purposes of due process, the Court concluded, "a Connecticut felon's expectation that a lawfully imposed sentence will be commuted or that he will be pardoned ... is simply a unilateral hope." *Id.* at 465, 101 S.Ct. at 2464. *See also Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540 (statute created no protected liberty interest where officials could act "for whatever reason or for no reason at all").

■ In the case before us, the Velascos argue that O.I. 103.1(a)(1)(ii) creates a justifiable expectation of receiving full and fair consideration for deferred action status where certain humanitarian factors are present. They point in particular to the first sentence of the Instruction, which states that:

> "In *every case* where the district director determines that adverse action *would be* unconscionable or result in undue hardship because of the existence of appealing humanitarian factors, he *shall rec-*

*ommend* consideration for deferred action category."

Rec., vol. I, at 101 (emphasis added). They contend that this Instruction, which also lists five specific factors that the district director "should" consider in making his determination, parallels the *Greenholtz* statute in language and structure and thus creates a liberty interest in deferred action that is entitled to protection under the due process clause of the Fifth Amendment.

We cannot agree. Although it is similar in some respects to the Nebraska parole statute in *Greenholtz,* O.I. 103.1(a)(1)(ii) does not mandate the *granting* of any substantive benefit or relief. It merely states that in certain circumstances the district director "shall *recommend consideration* for deferred action" to the appropriate INS regional commissioner. Rec., vol. I, at 101 (emphasis added). It is not the district director, but the regional commissioner who decides whether to grant deferred action status in a given case, and nowhere does the Instruction limit his discretion or in any way restrict his decision making authority. He apparently is free to accept or reject the district director's recommendations for any reason. Given the unfettered discretion and authority thus vested in the regional commissioner, any limitations the Instruction places on the district director's discretion, and any expectancy it thereby creates, are in our view too remote and insubstantial to rise to the level of a constitutionally protected liberty interest.[3]

The Supreme Court faced a similar situation in *Olim.* The Court there examined Hawaii prison regulations requiring the prison administrator to establish an impartial committee to conduct a hearing prior to the transfer of an inmate. Although the regulations mandated specific procedural requirements for the committee to follow and provided general guidelines for inmate classification decisions, the committee was

---

**3.** Previous cases addressing O.I. 103.1(a)(1)(ii) reflect confusion as to whether an internal operating guideline, in contrast to a statute or regulation, can create a protected interest. We do not decide this issue. Even assuming an internal guideline can create a protected interest, this particular Operations Instruction does not.

empowered only to make a recommendation to the administrator, who then decided what action to take. As the final decision maker, the administrator could affirm or reverse any or all of the committee's recommendation, or defer taking action and remand the matter to the committee. The Court noted that "[t]he regulations contain[ed] no standards governing the administrator's exercise of his discretion." 103 S.Ct. at 1744. Because the regulations thus placed "no substantive limitations on official discretion," the Court held that they did not create a liberty interest entitled to the protections of due process. *Id.* at 1747.

In our view, the Court's analysis in *Olim* compels an identical conclusion in the present case. The Court found it unnecessary to determine whether the regulations at issue in that case placed any substantive limitations on the "purely advisory" committee, because the administrator, who had "completely unfettered" discretion to transfer inmates, was the only decision maker under those regulations. *Id.* at 1747–48. *See also Pugliese v. Nelson*, 617 F.2d 916, 923–25 (2d Cir.1980). Here, the only decision maker under O.I. 103.1(a)(1)(ii) is the regional commissioner, whose discretion to grant or deny deferred action status likewise is unfettered. It may be true that the discretion of the district director is guided by "particularized standards or criteria." *Olim*, 103 S.Ct. at 1747. But because he can only *recommend* consideration for deferred action status, his role in the decision making process is "purely advisory," like the committee in *Olim*. In short, O.I. 103.-1(a)(1)(ii) places no effective limitations on official discretion, and thus creates no protected liberty interest in deferred action.

■ The Velascos' contention that the Instruction creates a protectible interest in *being considered* for deferred action status misconceives the nature of constitutionally protected interests. It is settled that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 1748 n. 12. *See, e.g., Shango v. Jurich*, 681 F.2d 1091, 1100–02 (7th Cir.1982); *Slocum v. Georgia State Board of Pardons & Paroles*, 678 F.2d 940, 941–42 (11th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982); *Bills v. Henderson*, 631 F.2d 1287, 1298–99 (6th Cir.1980); *Pugliese*, 617 F.2d at 924–25; *Cofone v. Manson*, 594 F.2d 934, 938–39 (2d Cir.1979); *Lombardo v. Meachum*, 548 F.2d 13, 15–16 (1st Cir.1977). " '[A] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.' Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*, 103 S.Ct. at 1748 (quoting *Shango*, 681 F.2d at 1100–01) (footnote omitted).

The Velascos have no legitimate claim of entitlement to deferred action status. Consequently, there exists no substantive interest for process to protect. Absent a substantive interest in deferred action, the procedures established by O.I. 103.1(a)(1)(ii) for making deferred action determinations are not in themselves constitutionally compelled. *See Slocum*, 678 F.2d at 942; *Shango*, 681 F.2d at 1102.

We have carefully considered all of the Velascos' arguments in this case and find them unpersuasive. The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.