**Gabriel Salgado FUENTES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 83–7662.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1985.

Decided July 10, 1985.

Teresa Bright, Redwood City, Cal., for petitioner.

Dept. of Justice, Marshall Tamor Golding, Washington, D.C., for respondent.

Before PREGERSON and FERGUSON, Circuit Judges, and GILLIAM,* District Judge.

FERGUSON, Circuit Judge:

Gabriel Salgado Fuentes, a native and citizen of Mexico, petitions for review of the denial by the Board of Immigration Appeals (BIA) of his motion to reopen his deportation proceedings. Petitioner Fuentes had unsuccessfully petitioned the BIA to reopen his deportation case so that he could apply for the exercise of the Attorney General's discretionary authority to suspend deportation. *See* 8 U.S.C. § 1254(a)(1). We grant the petition so that the BIA can exercise its equitable discretion in a manner consistent with the facts explained below.

## I.

Our task, like that of the BIA before us, is hampered by a less than plenary development of the factual record in this case. The primary reason for the inchoate state of the record lies in the procedure used by the Immigration and Naturalization Service (INS) in fulfilling its statutory duty to conduct a hearing on the petitioner's immigration status. The petitioner was subjected to a "mass deportation" hearing, along with several of his co-workers, in which the immigration judge conceded that the simultaneous consideration of so many cases would inevitably cause difficulties for the development of the facts of an individual case.

Piecing the record together as best we can, we can relate the following facts and issues. The petitioner, Gabriel Salgado Fuentes, is a twenty-seven-year-old male currently residing in California. Mr. Fuentes entered the United States without inspection in February 1974. A native and citizen of Mexico, Mr. Fuentes had been sent to the United States by his parents at the age of seventeen. Upon his arrival in the United States, Mr. Fuentes began working at the Ano Nuevo Ranch in Pescadero, California, as a farmworker. During the three years of his employment at Ano Nuevo Ranch, petitioner was paid wages of approximately $70 per week.

In 1977, some three years after he began working at the Ano Nuevo Ranch, Mr. Fuentes joined thirteen of his co-workers at the ranch and filed suit against his employer for violation of the minimum wage laws. In retaliation, their employer reported Mr. Fuentes and other members of the group to the INS as deportable aliens. In other words, the petitioner's deportation proceeding was proximately caused by his employer's retaliation for filing a lawsuit seeking the protection of this country's labor laws from his employer's unfair labor practices.

The record is silent as to the outcome of Mr. Fuentes' labor lawsuit. The record does reflect, however, that the petitioner was released "on his own recognizance" after he was taken into custody in September 1977. In May 1980, the District Director of the INS "decided to go forward with the deportation hearing on the grounds that the [petitioner] had been given more than enough time to seek judicial resolution of his employment claim."

At the conclusion of the mass deportation hearing, the immigration judge found the petitioner deportable after the petitioner conceded deportability but sought the exercise of the Attorney General's discretion to suspend deportation under 8 U.S.C. § 1254. The petitioner and the respondent disagree on what transpired at the hearing.

According to the petitioner, the immigration judge informed petitioner's former counsel that because of the aggregate nature of the proceedings and the burden this placed on a full presentation of the facts, the judge would grant any subsequently filed motions to reopen if supported by a showing of seven years' continuous presence. *See* 8 U.S.C. § 1254(a)(1) (permitting Attorney General to suspend deportation on showing of seven years' continuous residence, good moral character, and extreme

---

* The Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

hardship from deportation); 8 C.F.R. 3.2 (establishing criteria for motions to reopen as presentation of material evidence establishing prima facie case based on new information not previously available). The petitioner also claims that the INS trial attorney accepted this procedure. The respondent denies that the immigration judge promised that because of the mass hearing he would grant future motions to reopen based solely on seven years' residency.

The INS contends that the immigration judge's promises aimed at mitigating the harms associated with the truncated record of a mass deportation hearing are the subject of a second motion to reopen and therefore are not currently before this court. We agree that we cannot decide the factual dispute as to the promises made by the immigration judge or the INS trial attorney in this petition. Nonetheless, we recognize that any inducement offered to expedite the administrative hearing will have had an effect on the state of the administrative record.

The immigration judge denied the motion to reopen because the petitioner allegedly had not met the seven-year residency requirement and "also ... for the reasons cited by the Government's Attorney in their [sic] brief." Decision of September 1, 1982. The petitioner appealed this decision. On appeal, the BIA declined to address the residency question and instead dismissed the appeal based on a lack of evidence on extreme hardship sufficient to establish "additional equities."

## II.

This case involves a reconciliation of competing legislative directives concerning the enforcement of our nation's labor and immigration laws.

On the one hand, Congress has enacted various labor laws to foster peace, security, and equal treatment in our nation's labor force. *See* 29 U.S.C. § 151. As the Supreme Court recently noted, "If undocumented alien employees were excluded from participation in union activities and from protections against employer intimi-

dation, there would be created a subclass of workers without a comparable stake in the collective goals of their legally resident co-workers, thereby eroding the unity of all the employees and impeding effective collective bargaining." *Sure-Tan, Inc. v. NLRB*, — U.S. —, 104 S.Ct. 2803, 2809, 81 L.Ed.2d 732 (1984). Beyond question, the Attorney General is charged with the responsibility of insuring that the labor laws of this country are duly enforced in such a manner as to prevent the creation of this type of employee subclass. "If the [federal labor laws] were inapplicable to workers who are illegal aliens, we would leave helpless the very persons who most need protection from exploitative employer practices such as occurred in this case." *NLRB v. Apollo Tire Co.*, 604 F.2d 1180, 1184 (9th Cir.1979) (Kennedy, J., concurring).

On the other hand, we are well aware of the magnitude of the Attorney General's separate responsibility to enforce the immigration laws of this country. In keeping with the Constitution's mandate that the executive branch "take Care that the Laws be faithfully executed," art. II, § 3, the Attorney General must simultaneously enforce both the labor and immigration laws of this country. On some occasions the demands of the labor laws may conflict with the dictates of the immigration laws. We have no doubt that, in many cases, fulfillment of this "dual responsibility," *see United States v. Valenzuela-Bernal*, 458 U.S. 858, 864, 102 S.Ct. 3440, 3444, 73 L.Ed.2d 1193 (1982), will prove a difficult task.

The deportation of illegal aliens who have relied on our nation's courts and labor laws places the Attorney General in the unenviable position of either advertently or inadvertently suborning the efforts of those who would violate the labor laws of this country. In addressing this latter petition for review of the denial of the motion to reopen, our inquiry is limited to the latter possibility. Moreover, the resolution of the Attorney General's executive responsibilities regarding aliens may place the

Attorney General in conflict with the executive duties of the Secretary of Labor regarding the enforcement of the labor laws of the United States. *See* 29 U.S.C. §§ 202, 216, 551.

We are conscious of the narrow role ascribed to the federal judiciary in matters relating to the enforcement of this country's immigration laws. We cannot sit in judgment of the Attorney General's substantive exercise of his discretion in meeting the competing demands of the nation's labor and immigration laws. If the Attorney General, or Congress, chooses to elevate the enforcement of one set of laws over another, we are in no position to interpose a "chancellor's foot" veto. *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973).

In passing on a motion to reopen, the immigration judge and, in turn, the BIA must look to the proffered record to determine whether the petitioner has presented evidence which is both "material" and *could not have been presented in the prior deportation hearing.* 8 C.F.R. § 3.2. At oral argument, counsel for the INS conceded that if deportation proceedings were proximately caused by an employer's retaliation for his employees' report of illegal conduct by the employer, then this fact would be an important factor in the exercise of the Attorney General's discretion in deportation proceedings. Stated more simply, this fact would be material to the immigration judge's exercise of the discretion vested in him by delegation of the Attorney General. Counsel for the INS also acknowledged that the import of this material fact was never specifically addressed in either the deportation proceeding itself or in the consideration of the petitioner's motion to reopen.

The Supreme Court has recently acknowledged that the Attorney General's discretion in considering a motion to reopen is broad enough to encompass factors not within the plain language of the immigration laws. *See INS v. Rios-Pineda*, — U.S. ——, —— – ——, 105 S.Ct. 2098, 2101–2103, 85 L.Ed.2d 452, 53 U.S.L.W. 4537,

4538–39 (May 13, 1985). As the Court held in *Rios-Pineda*, the Attorney General has the discretion to consider factors such as the "flagrancy and nature" of the alien's immigration violations among the many considerations that are properly weighed in the INS's "legitimate concerns about the administration of the immigration laws." *Id.* at ——, 105 S.Ct. at 2103. This broad view of the discretion vested in the Attorney General and his delegates is consistent with the position taken by respondent's counsel that the Attorney General has the discretion to consider an alien's beneficial service to the laws of this country.

We are also aware of another route available to the INS for the recognition of an alien's service to the enforcement of the laws of this country. Under regulations promulgated by the INS, the pertinent INS District Director could place the petitioner's case on deferred action status. More specifically, Operating Instruction 242.-1(a)(22) provides:

> The district director may, in his or her discretion, recommend consideration of *deferred action,* an act of administrative choice to give some cases lower priority and in no way an entitlement, in appropriate cases. The deferred action category recognizes that the Service has limited enforcement resources and that every attempt should be made administratively to utilize these resources in a manner which will achieve the greatest impact under the immigration laws. In making deferred action determinations, the following factors, *among others,* should be considered:
>
> . . . .
>
> (B) the presence of sympathetic factors which, while not legally precluding deportation, could lead to unduly protracted deportation proceedings, and which, because of a desire on the part of the administrative authorities or the courts to reach a favorable result, could result in a distortion of the law with unfavorable implications for future cases;

(C) the likelihood that because of the sympathetic factors in the case, a large amount of adverse publicity will be generated which will result in a disproportionate amount of Service time being spent in responding to such publicity or justifying actions ....

By its own terms, the Operating Instruction confers some measure of administrative discretion on the District Director to take into consideration factors that are not readily apparent in the statutory constellation of the immigration laws. Again, however, we recognize that the role of the courts in the review of this discretion is extremely limited. Nonetheless, the petitioner's effort to vindicate the labor laws of this country reveals a "substantial basis in the record upon which the district director could place the petitioner in the deferred action category and thus allow him to remain in this country on humanitarian grounds." *In re Guerrero-Morales*, 512 F.Supp. 1328, 1331 (D.Minn.1981). We need not speculate on the likely disposition of a deferred action request or on any subsequent role by this court in reviewing such disposition. Instead, we simply observe that the respondent has the discretion to consider the petitioner's service in the form of a request for deferred action status. Accordingly, in remanding this case to the BIA to permit an informed exercise of the Attorney General's administrative discretion, we also note the suitability of the petitioner's case for consideration of deferred action status.

### CONCLUSION

In order to permit the Attorney General to consider the import of the facts in this case, we will grant the petition and remand this case to the BIA "with instructions to reconsider the motion to reopen and to articulate the underlying reasons and basis for any rulings it makes." *Sida v. INS*, 665 F.2d 851, 855 (9th Cir.1981). We reiterate, however, that we do so not because we consider ourselves empowered to sit in judgment on the ultimate exercise of the Attorney General's discretionary decisions on this matter. We remand only to preclude the possibility that the Attorney General's decision on this matter was inadvertent.

For the reasons stated in the foregoing discussion, the petition for review is GRANTED and the cause is REMANDED to the BIA.