**Elsa Lucero SIVERTS, Plaintiff,**

v.

**William CRAIG, District Director, U.S. Immigration and Naturalization Service, Defendant. (Two cases).**

Civ. Nos. 81–0214, 81–0221.

United States District Court, D. Hawaii.

Feb. 7, 1985.

William F. Thompson, III, Honolulu, Hawaii, for plaintiff.

Elliot Enoki, Asst. U.S. Atty., Honolulu, Hawaii, for defendant.

### ORDER GRANTING PLAINTIFF'S PETITION FOR WRIT OF HABEAS CORPUS

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE DECLARATORY JUDGMENT ACTION

PENCE, Senior District Judge.

Defendant's Motion to Dismiss each of the above actions having come on for a hearing on December 19, 1984 at 11:00 a.m. before the Honorable Martin Pence, and the court having reviewed the record and the parties' written and oral arguments, finds as follows:

At the hearing on December 19, 1984, the court agreed to postpone any ruling on defendant's Motion to Dismiss and Plaintiff's Petition for a Writ of Habeas Corpus until a decision on a Motion for Reconsideration in the case of *Patel v. Landon,* 739 F.2d 1455, was rendered by the Ninth Circuit. The Ninth Circuit entered an Order Denying Petition for Rehearing in *Patel v. Landon* on December 26, 1984. This case is thus ripe for adjudication.

### I.

Plaintiff was admitted to the U.S. as a nonimmigrant visitor on April 2, 1973. On April 25th of that year, plaintiff applied for an adjustment of status due to her marriage to a U.S. citizen, Eufenico Tacub. Her status was adjusted to that of lawful permanent resident on August 22, 1973.

Plaintiff's marriage to Tacub was void, however, in that at the time of the marriage, plaintiff was still married to a Mahittipongse of Thailand. Upon obtaining this information, the Immigration and Naturalization Service ("INS") notified plaintiff of its intent to rescind her adjustment of status on February 11, 1975.

Plaintiff had since divorced her U.S. husband, Tacub on April 23, 1974 and her Thai husband on May 17, 1974. On May 30, 1974, plaintiff married another U.S. citizen, Cranston.

The rescission hearing was held on February 27, 1976. Plaintiff appeared *pro se* and admitted that she had married Tacub solely for the purpose of gaining permanent resident status. Plaintiff testified that she and Tacub had not lived together, and that the marriage had been entered into for immigration purposes only. The immigration judge rescinded her adjustment of status.

After the rescission hearing, plaintiff filed another application for adjustment of status to that of permanent resident based upon her marriage to Cranston. Plaintiff then requested advance parole status so that she could leave the U.S. to visit her sick child in Thailand. The INS interviewed plaintiff in August of 1976 and granted her advance parole status. Plaintiff left the country on September 2, 1976.

Upon her return to the U.S. on October 5, 1976, the INS notified plaintiff of its intention to conduct an exclusion and detainment hearing under INA § 212(a)(20) [8 U.S.C. § 1182(a)(20)], charging plaintiff with being an "immigrant not in possession of a valid immigrant visa." On January 24, 1977, INS revoked its approval of plaintiff's husband's petition in her behalf due to their divorce in December of 1976.

An exclusion hearing was convened on February 4, 1977 and continued to April 12 so that the plaintiff could procure counsel. On April 12 the immigration judge ordered that plaintiff be excluded as an immigrant not in possession of a valid immigrant visa.[1]

Plaintiff appealed the exclusion order to the Board of Immigration Appeals, which dismissed the appeal on February 6, 1978. The Board then denied plaintiff's Motion to Reconsider on May 20, 1980 and her Motion to Reopen on May 21, 1981.

Plaintiff filed a request for deferred action status under INS Operations Instructions 103.1(a)(1)(ii) on June 8, 1981. The INS denied plaintiff's request, and plaintiff then filed her Declaratory Judgment action and Petition for Writ of Habeas Corpus in the United States District Court for the District of Hawaii.

## II.

The decisive issue in this case is whether plaintiff's brief departure from and return to the U.S. in 1976 constituted an "entry" under the U.S. immigration laws so as to subject her to exclusion proceedings.[2] As to this issue, the Ninth Circuit case of *Patel v. Landon,* 739 F.2d 1455 (1984), is, without a doubt, controlling.

Because of the remarkable factual similarity between *Patel* and the instant case, a synopsis of the facts of *Patel* is deemed appropriate. Patel came from India to the U.S. as a nonimmigrant student in 1971. In 1974, he bought a Los Angeles hotel and sought adjustment status from the INS to that of a non-preference investor. Plaintiff's application was denied, and plaintiff sought review and reconsideration. On May 17, 1978, prior to any decision from the INS on plaintiff's Motion for Reconsideration, plaintiff was granted advance authorization for parole into the U.S. so that he could visit his ailing father in India. On June 6, 1978, plaintiff returned from India to resume his application for adjustment of status.

On October 31, 1978, INS denied the Motion for Reconsideration, revoked Patel's parole, and placed Patel in exclusion proceedings. Patel argued that he should have been in deportation proceedings, due to the substantial procedural advantages not available in exclusion proceedings.

The Ninth Circuit held that Patel's brief departure from the U.S. did not subject him to exclusion upon his return. INS's paroling of Patel into the U.S. was merely an effort to set up the fiction that Patel was still outside the U.S. seeking entry. 739 F.2d at 1457. Patel's departure was innocent, casual and brief, as such, his applica-

---

**1.** On April 5, 1977, plaintiff married another U.S. citizen, Louis Brown. Plaintiff then obtained a divorce from Brown and has since married her fifth, and as of this date final, husband, Blair Siverts, also a U.S. citizen. Plaintiff has had one child by Siverts.

**2.** Plaintiff argues that the INS should have brought deportation rather than exclusion proceedings against her. An alien in deportation proceedings has great advantages than one in exclusion proceedings. An alien subject to deportation can designate the country of deportation; can depart the U.S. voluntarily, thus avoiding the stigma of deportation; and, most importantly, can seek suspension of deportation, because of a marriage, children, hardship, etc. These "rights" are not available to an alien in exclusion proceedings.

tion " '[must] be adjudicated without regard to the departure and absence.' " *citing, Joshi v. District Director, INS,* 720 F.2d 799 (4th Cir.1983).

Of significance to Siverts' claim is the *Patel* court's finding that

By seeking advance parole prior to his departure from this country in 1978, [Patel] sought to preserve his right to deportation proceedings upon his return. Form I–512, which [Patel] filled out in conjunction with his request for advance parole, did not sufficiently indicate otherwise. It is clear that [Patel] was trapped into exclusion status when he was given parole and this the Court cannot condone. *Id.* at 1457.

Siverts also filled out Form I–512 prior to her departure to and return from Thailand. Siverts' statement that she did not realize the consequences of a grant of advance parole is undisputed by the INS, and it is clear that her absence from the U.S. was "innocent, casual and brief."

■ The decisions of the Ninth Circuit are binding upon this court. As such, this court has no choice but to hold that Siverts should be in deportation, not exclusion, proceedings. Plaintiff's Petition for Writ of Habeas Corpus is hereby GRANTED. Defendant's Motion to Dismiss Civil No. 81–0214 is thus DENIED.

### III.

Defendant has also brought a Motion to Dismiss in Civil No. 81–0221, plaintiff's Declaratory Judgment action. In this action, plaintiff seeks to have the court order the INS to defer action on plaintiff's exclusion. This court's holding that plaintiff is not an appropriate candidate for exclusion renders plaintiff's declaratory judgment action moot.

However, for the sake of limiting further litigation should plaintiff be found deportable, the court grants INS's Motion to Dismiss.

■ The granting of "deferred action status" under INS Operating Instruction 103.1(a)(1)(ii) is an informal administrative

stay of deportation, "having no effect on an alien's adjudication as deportable but potentially leading to an extended stay in this country." *Wan Chung Wen v. Ferro,* 543 F.Supp. 1016 (W.D.N.Y.1982). The decision to grant or withhold deferred action status lies within the discretion of the INS and is clearly for the INS's convenience and benefit, *not* the alien's. *Soon Bok Yoon v. INS,* 538 F.2d 1211 (5th Cir.1976).

The Ninth Circuit reached a contrary conclusion in *Nicholas v. INS,* 590 F.2d 802 (1979), deciding that deferred action status was a "directive provision conferring a substantial benefit upon aliens based upon humanitarian considerations rather than existing solely for the convenience of the INS." 590 F.2d at 808. However, this decision has been severely criticized and rejected in *Zacharakis v. Howerton,* 517 F.Supp. 1026 (S.D.Fla.1981) and other cases. Moreover, the rationale of *Nicholas* has been severely undermined by a recent amendment of Operating Instruction 103.-1(a)(1)(ii). It is no longer possible to conclude that it is intended to confer any benefit upon aliens; it exists solely for the INS's own convenience. As it is an act of administrative choice, the court cannot and will not order that the INS grant plaintiff deferred action status.

IT IS SO ORDERED.