Pedro M. **ROMEIRO De SILVA**, also known as Pedro M. De Romeiro, **Plaintiff-Appellant**,

v.

William F. **SMITH**, U.S. Attorney; Alan Nelson, Commissioner of I & NS; Ernest E. Gustafson, District Director; Phoenix, Office of I & NS, Defendant-Appellee.

No. 84–2104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1985.

Decided Oct. 7, 1985.

Marshall G. Whitehead, DePrima, Anderson & Whitehead, Phoenix, Ariz., for plaintiff-appellant.

Richard K. Willard, Richard M. Evans, Morris H. Deutsch, Washington, D.C., for defendant-appellee.

Before WALLACE and POOLE, Circuit Judges, and LEAVY,* District Judge.

POOLE, Circuit Judge:

Pedro M. Romeiro de Silva appeals the district court's grant of summary judgment to the Immigration and Naturalization Service (INS) on his claim that the INS abused its discretion in denying him deferred action status under Operations Instruction 103.1(a)(1)(ii).[1] We remand to the district

---

\* The Honorable Edward Leavy, United States District Judge for the District of Oregon, sitting by designation.

1. Operating Instruction 103.1(a)(1)(ii), in effect as of September 20, 1978, provides:

In every case where the district director determines that adverse action would be unconscionable or result in undue hardship because of the existence of appealing humanitarian factors, he shall recommend consideration for deferred action category. His recommendation shall be made to the regional commissioner concerned * * *. Interim or biennial reviews should be conducted to determine whether approved cases be continued or removed from deferred action category.

When determining whether a case should be recommended for deferred action category, consideration should include but not be limited to the following: (1) advanced or tender age; (2) number of years presence in the United States; (3) physical or mental condition requiring care or treatment in the United States; (4) family situation in the United States—effect of expulsion; (5) criminal, immoral or subversive activities or affiliations—recent conduct. If the district director's recommendation is approved by the regional commissioner the alien shall be notified that no action will be taken by the Service to

disturb his immigration status, or that his departure from the United States has been deferred indefinitely, whichever is appropriate.

Operating Instruction 103.1(a)(1)(ii), in effect as of May 6, 1981, provides:

The district director may, in his discretion, recommend consideration of deferred action, an act of administrative choice to give some cases lower priority and in no way an entitlement, in appropriate cases. (Revised)

The deferred action category recognizes that the Service has limited enforcement resources and that every attempt should be made administratively to utilize these resources in a manner which will achieve the greatest impact under the immigration laws. In making deferred action determinations, the following factors, among others, should be considered:

(A) the likelihood of ultimately removing the alien, including:

(1) likelihood that the alien will depart without formal proceedings (e.g., minor child who will accompany deportable parents);

(2) age or physical condition affecting ability to travel;

(3) likelihood that another country will accept the alien;

court with instructions to dismiss for lack of jurisdiction.

## FACTS AND PROCEEDINGS

Romeiro de Silva, a Portugese alien, pled guilty in Arizona state court to commission of the felony of unlawful possession of a narcotic drug for sale (cocaine) in violation of Arizona Revised Statutes Annotated §§ 36–1002.01, 13–701, 13–702, and 13–802. He had been admitted into the United States as a permanent resident in 1979 because he married a United States citizen. On the basis of the narcotics conviction, an immigration judge found him deportable under section 241(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1251(a)(11), and ordered him deported on November 5, 1982.

On November 4, 1982, Romeiro de Silva requested deferred action status under Operations Instruction 103.1(a)(1)(ii) to defer indefinitely his departure from the United States. He argued that he qualified for deferred action status because his United States citizen wife and child would suffer economic and emotional harm if they were separated from him or had to join him in Portugal, and because his narcotics conviction was "less serious" than the convictions of other aliens to whom the INS had granted deferred action status. The INS district director considered each of these factors and on June 9, 1983, denied Romeiro de Silva's request.

On August 11, 1983, Romeiro de Silva requested the INS district director to reconsider his decision on the basis of new medical evidence concerning his child. Before the district director rendered a decision, Romeiro de Silva filed this action in district court alleging that the district director abused his discretion in denying deferred action status.

The district court stayed Romeiro de Silva's deportation, delayed consideration of the government's motion to dismiss, and held an evidentiary hearing on his entitlement to the requested relief. The district court then remanded the matter to the district director to permit him to render an opinion on Romeiro de Silva's request.

The district director denied Romeiro de Silva's request on March 29, 1984. The district court denied the INS's motion to dismiss for lack of jurisdiction, held the 1981 Operations Instruction invalid for failure to comply with the rulemaking requirements of 5 U.S.C. § 553, and applied the 1978 Operations Instruction in its stead. After concluding that the district director had not abused his discretion, the district court on May 15, 1984 entered summary judgment in favor of the government. Romeiro de Silva timely appealed.

## DISCUSSION

The issue presented by this appeal is whether the district court had jurisdiction to review the district director's decision not to recommend that the regional commissioner grant Romeiro de Silva deferred action status. The INS contends that Operations Instruction 103.1(a)(1)(ii) is an intra-agency guideline which confers no substantive benefit on aliens seeking inclusion in the deferred action category. Thus, the INS argues, the district court lacked jurisdiction to review the district director's decision under the Administrative Procedures Act, 5 U.S.C. § 706.

(4) the likelihood that the alien will be able to qualify for some form of relief which would prevent or indefinitely delay deportation;
(B) the presence of sympathetic factors which, while not legally precluding deportation, could lead to unduly protracted deportation proceedings, and which, because of a desire on the part of the administrative authorities or the courts to reach a favorable result, could result in a distortion of the law with unfavorable implications for future cases;

(C) the likelihood that because of the sympathetic factors in the case, a large amount of adverse publicity will be generated which will result in a disproportionate amount of Service time being spent in responding to such publicity or justifying actions;
(D) whether or not the individual is a member of a class of deportable aliens whose removal has been given a high enforcement priority (e.g., * * * narcotic drug traffickers * * *).

      \*     \*     \*     \*     \*     \*

Romeiro de Silva contends, and the district court agreed, that jurisdiction in the district court was proper under 8 U.S.C. § 1329 because the action arose under the provisions of subchapter II of the Act relating to immigration and deportation of aliens.[2] Romeiro de Silva relies for support on our holding in *Nicholas v. INS*, 590 F.2d 802 (9th Cir.1979), that the 1978 version of Operations Instruction 103.1(a)(1)(ii) confers substantive benefits upon aliens rather than merely providing internal procedural guidelines to the INS. *Id.* at 807.

The INS contends that this case does not arise under subchapter II of the Act. It argues that we erred in *Nicholas* in concluding that we had jurisdiction to review the district director's exercise of discretion under the 1978 version of Operations Instruction 103(a)(1)(ii). Rather, the INS contends that we should overrule *Nicholas* and join the other circuits which have unanimously held that deferred action status determinations are not reviewable to determine compliance with the 1978 Operations Instruction.

Most other courts that have considered this issue have concluded that the 1978 Operations Instruction is an intra-agency guideline which confers no substantive benefit on aliens seeking inclusion in the deferred action category. *Pasquini v. Morris*, 700 F.2d 658, 661 (11th Cir.1983); *Soon Bok Yoon v. INS*, 538 F.2d 1211, 1213 (5th Cir.1976); *Lennon v. INS*, 527 F.2d 187 (2d Cir.1975); *Wan Chung Wen v. Ferro*, 543 F.Supp. 1016, 1017–18 (W.D.N.Y.1982); *Zacharakis v. Howerton*, 517 F.Supp. 1026, 1027–28 (S.D.Fla.1981). *See Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 798 (10th Cir.1984). *See also Siverts v. Craig,* 602 F.Supp. 50, 53 (D.Hawaii 1985) (construing 1981 instruction). *But see In re Guerrero-Morales*, 512 F.Supp. 1328, 1329 (D.Minn.1981) (following *Nicholas* ). Thus, under those decisions, the Operations Instruction does not have the force and effect

of substantive law. *Pasquini v. Morris,* 700 F.2d at 661 (citing *Dong Sik Kwon v. INS*, 646 F.2d 909 (5th Cir.1981) (en banc)). Rather, it is an " 'informal and ministrative stay of deportation * * * issued in large part for the convenience of the INS.' " *Pasquini,* 700 F.2d at 662 (quoting *Soon Bok Yoon v. INS*, 538 F.2d at 1213). Because the instruction vests the regional commissioner with unfettered discretion to determine whether to grant an informal administrative stay of deportation to an otherwise deportable alien, it creates no protectible liberty interest in deferred action, nor does it create a protectible interest in being considered for deferred action status. *Velasco-Gutierrez,* 732 F.2d at 798. *Contra Pasquini,* 700 F.2d at 663 n.* (internal operating instruction confers no substantive right on alien-applicant but it does confer procedural right to be considered for such status upon application).

We would be bound by the precedent of *Nicholas* to hold that the 1978 Operations Instruction does confer a substantive benefit upon Romeiro de Silva if that instruction were still in full force and effect. But whatever the true nature of the 1978 instruction, it has now been superseded by a later intra-agency provision and is no longer in being. Consequently, the rationale of the *Nicholas* decision has been severely undermined by the 1981 amendment of the Operations Instruction. *Wan Chung Wen,* 543 F.Supp. at 1018. Under the 1981 instruction, "it is no longer possible to conclude that [the instruction] is intended to confer any benefit upon aliens, rather than [to operate] merely for the INS's own convenience." *Id. See Siverts,* 602 F.Supp. at 53. The language of the 1981 instruction supports this view; it provides:

The district director may, in his discretion, recommend [to the regional commissioner] consideration of deferred action, an act of administrative choice to give

---

2. Jurisdiction is not exclusively in the court of appeals under § 106 of the Act, 8 U.S.C. § 1105a(a), because the request for discretionary relief did not underlie the deportation order. *See Cheng Fan Kwok v. INS*, 392 U.S. 206, 210, 88 S.Ct. 1970, 1973, 20 L.Ed.2d 1037 (1968); *Wall v. INS,* 722 F.2d 1442, 1443 (9th Cir.1984); *Londono-Gomez v. INS,* 699 F.2d 475, 478 (9th Cir.1983); *Ghorbani v. INS,* 686 F.2d 784, 791 (9th Cir.1982).

some cases lower priority and in no way an entitlement, in appropriate cases.

The deferred action category recognizes that the Service has limited enforcement resources and that every attempt should be made administratively to utilize these resources in a manner which will achieve the greatest impact under the immigration laws.

O.I. 103.1(a)(1)(ii) (1981). Thus, *Nicholas* need not be overruled to sustain the INS' position that we lack jurisdiction to review the district director's decision to deny Romeiro de Silva's request for deferred action status, because that decision was made pursuant to the 1981 Operations Instruction. *See Siverts*, 602 F.Supp. at 53.

Romeiro de Silva contends, however, that the 1981 Operations Instruction is invalid for failure to comply with the publication requirement of 5 U.S.C. § 553, that the 1978 instruction was not validly superseded, and therefore the district court correctly applied the 1978 instruction as interpreted in *Nicholas*, 590 F.2d 802. He challenges the district court's conclusion that the district director did not abuse his discretion in denying Romeiro de Silva's request.

■ We do not reach Romeiro de Silva's latter contention because we agree with the INS that the 1981 instruction was validly promulgated. Operations Instruction 103.1(a)(1)(ii) falls into the "general statement of policy" exception to 5 U.S.C. § 553's requirements. *See* 5 U.S.C. § 553(b)(A). Proposed regulations require publication because they normally involve substantive rights and have the force of law. *Pasquini*, 700 F.2d at 662. INS operations instructions fall within section 553(b)(A)'s exception because the instructions are internal directives not having the force and effect of law. *See id.* (discussing 1978 instruction); *Dong Sik Kwon v. INS,*

646 F.2d 909, 918–19 (5th Cir.1981) (discussing operations instructions generally).[3]

■ Nor do we agree with Romeiro de Silva that since *Nicholas* held that the 1978 Operations Instruction granted aliens substantive rights, the decision somehow prevents the INS from amending the old instruction in the same way it was originally promulgated. An agency is bound by its regulations so long as they remain operative, but may repeal them and substitute new rules in their place. *See United States v. Nixon*, 418 U.S. 683, 696, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974); *Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Railway Co.*, 284 U.S. 370, 389, 52 S.Ct. 183, 186, 76 L.Ed. 348 (1932). The INS validly amended Operations Instruction 103.1(a)(1)(ii) in 1981; it was not required to comply with any other procedure. Our decision in *Nicholas* does not compel a different result.

■ The district court erred in concluding that the 1981 amendment of Operations Instruction 103.1(a)(1)(ii) was invalid, and in applying the 1978 Operations Instruction in its place. However, since we conclude that the district court lacked jurisdiction to review the district director's decision not to recommend deferred action status for Romeiro de Silva, we remand this case to the district court with instructions to dismiss for lack of jurisdiction.

REMANDED.

---

**3.** Romeiro de Silva also argues that 5 U.S.C. § 552(a)(1) requires administrative agencies to publish in the *Federal Register* regulations which involve substantive rights. Because *Nicholas* holds that the 1978 instruction creates a substantive right, 590 F.2d at 807, he contends

that the INS must comply with the requirement of the section. Because the 1981 Operations Instruction clearly does not create substantive rights, *see Siverts*, 602 F.Supp. at 53, we hold that the it was validly promulgated without complying with section 552.