**Maria Del Buen Consejo Cerna De CARRILLO, Juan Carlos Carrillo Serna, Marco Antonio Carrillo Serna, Plaintiffs,**

v.

**Marvin D. MOHRMAN, District Director, Immigration and Naturalization Service, District of Montana, in his Official Capacity, Defendant.**

Civ. No. 89–4086.

United States District Court,
D. Idaho.

Nov. 30, 1989.

**1414**

Camilo M. Lopez, Caldwell, ID, for plaintiffs.

Maurice O. Ellsworth, U.S. Atty., D. Marc Haws, Asst. U.S. Atty., Boise, ID, for defendant.

## PRELIMINARY INJUNCTION

CALLISTER, District Judge.

The Court has examined the entire record concerning the motion to rescind temporary restraining order and motion to dismiss filed by the Government, and the motion for preliminary injunction filed by the plaintiffs. In accordance with the views expressed in the memorandum decision accompanying this preliminary injunction,

NOW, THEREFORE, IT IS HEREBY ORDERED that the motion to dismiss filed by the Government for lack of jurisdiction be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that the motion for preliminary injunction filed by plaintiffs be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the defendant, his officers, agents, employees, successors and attorneys, and all those in active concert or participation with them, are enjoined and restrained from forcing the above-named plaintiffs to voluntarily depart from the United States, and are further restrained from entering an order of deportation against them and deporting them, until such time as the merits of the above-entitled matter have been decided after trial.

IT IS FURTHER ORDERED that the bond deposited with the Clerk of Court in support of the temporary restraining order filed August 29, 1989, shall be deemed to be a bond supporting the issuance of the present preliminary injunction and no further bond shall be required in support thereof.

## MEMORANDUM DECISION

The Court has before it plaintiffs' motion for preliminary injunction and defendant's motion to dismiss and motion to rescind the temporary restraining order issued August 29, 1989. The Court held an evidentiary hearing and the motions are now at issue.

Gabino and Maria Carrillo have resided for the past six years in Aberdeen, Idaho, with their three minor children, Juan Carlos, Marco Antonio, and Efrain. Gabino is a temporary legal resident of the United States, qualified to remain here as a Seasonal Agricultural Worker under the Immigration Reform and Control Act of 1986. The child, Efrain, is a United States citizen, having been born here in July 1986. It is undisputed that Maria Carrillo and her two sons, Juan Carlos and Marco Antonio, are Mexican citizens, all of whom entered the United States illegally in 1983.

The family resided together in this precarious legal status—part legal, part illegal—for six years until an unscrupulous "immigration consultant" set in motion a chain of events leading to this litigation. The "consultant" advised the Carrillos—for a fee—to turn Maria and her two sons into the Immigration and Naturalization Service (Service) where they would receive some sort of special permission to stay in the country. The Carrillos did so, but as they state in their complaint, they "were not qualified for any relief under the Immigration laws." *See* Plaintiffs' Complaint at ¶ VI(2) at p. 7. The "consultant" disappeared along with his fee, and the Carrillos were left in the firm grip of the Service.

The Service immediately began deportation proceedings against Maria and her two sons. In response, the Carrillos sought "voluntary departure" status which might allow them to remain here indefinitely. They based their request on "extreme hardship" and the "family fairness doctrine." On August 3, 1988, the District Director of the Service denied relief under the family fairness doctrine and also denied the request for

extended voluntary departure. The District Director did, however, grant the request for voluntary departure and gave Maria Carrillo and her two sons until October 1, 1988, to voluntarily depart.

On November 28, 1988, the Carrillos—represented by counsel—appeared before an Immigration Judge who extended the time for their voluntary departure until May 6, 1989. That decision was appealable, although the Carrillos let the appeal time expire without filing any appeal. Instead, they petitioned the District Director to reconsider his decision of August 3, 1988. This petition was based on new evidence that son Juan Carlos needed the drug Cylert to help treat his Attention Deficit Disorder. The District Director declined to reconsider his earlier decision although he did extend the voluntary departure date to June 24, 1989, and then extended it again to August 31, 1989.

The Carrillos responded by filing a complaint in this court on August 25, 1989. The complaint names the District Director as a defendant and seeks an order holding as arbitrary and capricious his denial of an extension of voluntary departure. In addition, the complaint seeks a preliminary injunction restraining the District Director from deporting the plaintiffs. On August 29, 1989, this Court entered a temporary restraining order enjoining the defendant from deporting the plaintiffs. The Court has held a hearing on the plaintiffs' motion for a preliminary injunction and on the Government's motions. The Court will now turn to a resolution of those motions.

The Government has moved to rescind the temporary restraining order and dismiss this case on the grounds that the Court has no personal or subject matter jurisdiction. The Government points out that there was no certification in the record that the complaint and summons had been served on the Attorney General of the United States in Washington, D.C., as required by Fed.R.Civ.P. 4(d)(4). In addition, there was no certification of service on District Director Mohrman as required by the same rule.

■ On September 8, 1989, after the motion hearing, the plaintiffs filed their certificate of mailing indicating that they had sent a copy of all relevant documents, including the summons and complaint, by certified mail to the Attorney General in Washington, D.C., and to District Director Mohrman in Montana. If a failure to properly serve the Government under Rule 4(d)(4) is corrected within the statute of limitations and 120-day service period, dismissal is not warranted. *See Johnson v. United States Postal Service*, 861 F.2d 1475 (10th Cir.1988). Because the plaintiffs have corrected the service deficiencies in a timely fashion, the Government's motion to dismiss for lack of personal jurisdiction must be denied.

The Court turns next to the Government's challenges to subject matter jurisdiction. The Government argues that this Court has no power to review decisions by the District Director refusing to extend the period for voluntary departure.

Under 28 U.S.C. § 1331 this Court has jurisdiction over all civil actions arising under the "Constitution, laws or treaties of the United States." This jurisdictional grant would appear to make reviewable a broad range of decisions made by administrative agencies pursuant to their delegated authority. Indeed, the United States Supreme Court has held that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

■ This Court begins, therefore, with a broad mandate under 28 U.S.C. § 1331 and the *Abbott* decision to review administrative agency decisions. But under *Abbott*, the Court must be guided by the "purpose of Congress," and the seminal act manifesting this congressional purpose is the Administrative Procedures Act (APA), 5 U.S.C. §§ 551–706. In that Act Congress has withdrawn this Court's jurisdiction to review agency decisions where "statutes preclude review" or where the decision is "committed to agency discretion by law." 5 U.S.C. § 701(a). These two instances are exceptions to the APA's "basic presumption of judicial review," and judicial review will be restricted only

where there is "clear and convincing evidence" of a restrictive legislative intent. *Abbott v. Gardner, supra* at 140, 141, 87 S.Ct. at 1511, 1512.

■ With these standards in mind, the Court turns to the Government's argument that the Court lacks jurisdiction to review the District Director's decision. The Court examines first whether any statutes preclude review. The Government points first to the regulations promulgated by the Service which provide that "no appeal may be taken" from a District Director's decision concerning an extension of the voluntary departure date. 8 C.F.R. § 244.2. The agency itself, however, cannot block judicial review of its own decisions in the absence of clear and convincing evidence that Congress agrees. *See Abbott v. Gardner, supra.* Administrative agencies must act within the scope of their delegated authority. *See National Cable Television Ass'n v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974) (FCC overstepped the bounds of its delegated authority by "taxing" cable television systems). In the absence of clear and convincing evidence that Congress intended to block judicial review, the regulation quoted above could at most mean that no *administrative* appeals would be permitted, which would in turn mean that the plaintiffs have exhausted their administrative remedies. But, the issue remains whether Congress, as opposed to the agency itself, intends to block judicial review.

■ With regard to this issue, the Government points the Court to 8 U.S.C. § 1105a which gives the Courts of Appeals exclusive jurisdiction to review final orders of deportation. That statute would oust this Court of jurisdiction to review a final order of deportation. But here the plaintiffs are not appealing from an order of deportation; rather, they appeal from the District Director's refusal to extend the voluntary departure date. The appeal of this decision is not governed by 8 U.S.C. § 1105a. *See Cheng Fan Kwok v. Immigration Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968) (Service decision refusing stay of deportation not governed by 8 U.S.C. § 1105a); *Romeiro De Silva v. Smith,* 773 F.2d 1021 at n. 2 (9th Cir.1985) (Service decision refusing to defer indefinitely a deportation order not governed by 8 U.S.C. § 1105a). The Government does not point the Court to any other statutes precluding review. The Court therefore finds that judicial review is not blocked by 5 U.S.C. § 701(a)(1).

■ The Court now turns to the second prong of 5 U.S.C. § 701: that is, whether the District Director's decision is "committed to agency discretion by law." The policy behind this section is that administrative decisions in areas of, say, national defense and foreign policy must go unreviewed because of the overriding concerns of speed and secrecy. The landmark Supreme Court case interpreting this provision of the APA is *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). There, the Supreme Court interpreted the phrase "committed to agency discretion" as follows:

> The legislative history of the APA indicates that it is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.

*Id.* at 410, 91 S.Ct. at 821–822.

Although commentators have criticized *Overton Park,* e.g., 5 DAVIS, *Administrative Law* § 28:8 (1984), the High Court has reaffirmed its decision and expanded upon it. In *Heckler v. Chaney,* 470 U.S. 821, 831–832, 105 S.Ct. 1649, 1655–1656, 84 L.Ed.2d 714 (1985), the Court stated that:

> *Overton Park* did not involve an agency's refusal to take requested enforcement action. It involved an affirmative act of approval under a statute that set clear guidelines for determining when such approval should be given. Refusals to take enforcement steps generally involve precisely the opposite situation, and in that situation we think the presumption is that judicial review is not available.

> [W]e note that when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect.

The Ninth Circuit has followed *Heckler v. Chaney, supra,* in a deportation case, *Mada–Luna v. Fitzpatrick,* 813 F.2d 1006 (9th Cir. 1987). There, the plaintiff had been ordered deported in 1983, and then applied for "deferred action status" under the 1981 Operating Instructions used internally by the Service. A request for deferred action status is quite similar to a request for an extended date for voluntary departure. Both have no effect on the underlying deportation order, but both potentially lead to an extended stay in this country. *See Siverts v. Craig,* 602 F.Supp. 50 (D.Haw.1985). In the *Mada–Luna* case, the District Director had the discretion under the Operating Instructions to defer action on a deportation order if the applicant met certain criteria. The District Director had denied plaintiff's request for deferred action, and the plaintiff "appealed" to the district court. The plaintiff prevailed at the district court level, and the Service appealed to the Circuit.

The question before the Circuit was whether the 1981 Operating Instructions had been validly promulgated. The plaintiff conceded that if the 1981 Operating Instructions were valid, the District Director properly denied his request. Thus, the plaintiff in *Mada–Luna* was not challenging the merits of the District Director's decision as the plaintiffs are in the case before this Court. This meant that the jurisdictional issue present here was not before the Circuit in *Mada–Luna.* Nevertheless, in dicta, the Circuit stated that if the plaintiff had challenged the merits of the District Director's decision, that challenge would be foreclosed because such a decision, under *Chaney* and § 701(a)(2), was "committed to agency discretion by law." *Id.* at n. 2. The circuit went on to say that a decision not to defer status is "not precisely" a decision not to take enforcement action, but nevertheless *Chaney* should apply because the District Director's decision would involve a balancing of factors which are peculiarly within the Service's expertise. *Id.* at n. 2. If this discussion of *Chaney* and § 701(a)(2) constituted a direct holding, it would be binding upon this Court and dispositive of the present case. But *Mada–Luna's* discussion of § 701(a)(2) was pure dicta because as previously noted the plaintiff did not challenge

the merits of the District Director's decision. Because *Mada–Luna's* "conclusion" concerning the reviewability of the District Director's decision is dicta, it carries little weight with this Court.

Two other Ninth Circuit decisions have also touched upon the reviewability of District Directors' decisions concerning deferred action status. In *Nicholas v. INS,* 590 F.2d 802 (9th Cir.1979), the petitioner had been denied deferred action status under the 1978 version of the Service's Operating Instructions. *Id.* at n. 8. Apparently the Service had refused to grant this status to the petitioner because of his past drug record. The Circuit never raised the question whether it had jurisdiction to review the decision of the District Director. Instead, the sole question in *Nicholas* was the scope of the standard of review. The Service had argued that the scope of review was extremely narrow and that the petitioner must show not only that others similarly situated had been treated differently but also that the District Director's decision was based upon impermissible criteria such as race or religion. The petitioner argued for a more lenient standard of review permitting him to prevail if he could show that the District Director's decision departed from an established pattern of treatment of others similarly situated without reason, as to be arbitrary and capricious.

To resolve this issue, the Circuit examined cases from other jurisdictions to determine whether the Operating Instructions were simply intra-agency guidelines creating no substantive rights, or whether the operating instructions entitled the petitioner to certain treatment. The Circuit held that the 1978 Operating Instructions were more than intra-agency guidelines and thus adopted the standard of review advocated by the petitioner. Nevertheless, under that standard of review, the circuit ultimately upheld the District Director's decision.

The Service learned its lesson in *Nicholas,* and in 1981 amended its Operating Instructions to make it clear that they were simply intra-agency guidelines conferring no substantive rights upon aliens. These new 1981 Operating Instructions were then examined

by the Ninth Circuit in *Romeiro De Silva v. Smith, supra.* The petitioner therein had been denied deferred action status under the 1981 Operating Instructions, apparently because of past narcotics convictions. Petitioner then appealed that decision to the district court alleging that the District Director had abused his discretion in denying deferred action status. The Service prevailed at the district court level and the petitioner appealed to the Ninth Circuit.

The Circuit framed the issue on appeal as follows: "The issue presented by this appeal is whether the district court had jurisdiction to review the District Director's decision not to recommend that the Regional Commissioner grant Romeiro De Silva's deferred action status." *Id.* at 1022. The Circuit then went on to discuss the *Nicholas* decision and decisions of other courts concerning whether the Operating Instructions constituted mere intra-agency guidelines or instead conferred substantive benefits upon aliens. The Circuit pointed out that the Service had amended the Operating Instructions since *Nicholas,* and that the amended instructions clearly provided that they were merely intra-agency guidelines. Because the instructions conferred no substantive rights on aliens, the Circuit concluded that the district court lacked jurisdiction to review the District Director's decision and thus remanded the case to the district court with instructions to dismiss for lack of jurisdiction.

The decision in *Romeiro De Silva* is quite perplexing. The decision appears to be based on § 701(a)(2), but that provision is never discussed. The Circuit finds no jurisdiction but neglects to discuss the law concerning jurisdiction contained in § 701(a) and the Supreme Court cases interpreting that provision. The applicability of § 701(a)(2) has never turned on the question whether a particular regulation confers a "right" or only a "mere privilege." Indeed, the idea that judicial review is blocked by an agency pronouncement that confers a privilege rather than a right has been rejected by the Ninth Circuit in a similar context. In *Villanueva–Franco v. INS,* 802 F.2d 327 (1986), the Ninth Circuit followed a long line of its own cases holding that the District Director's

decisions concerning voluntary departure constitute a privilege, not an entitlement, and yet went on to hold that the District Director's decision is nevertheless subject to judicial review.

It appears that the Circuit in *Romeiro De Silva* has confused jurisdictional issues with scope of review issues. The circuit itself has been perplexed by *Romeiro De Silva.* In the *Mada–Luna* decision, issued two years after *Romeiro De Silva,* the circuit stated in dicta that *Romeiro De Silva* was "presumably" based on § 701(a)(2). *Id.* at n. 2. But if *Mada–Luna* was hoping to straighten out the caselaw on this issue by implying that *Romeiro De Silva* was actually based on § 701(a)(2), it confused the issue in another portion of its opinion. In another footnote, *Mada–Luna* also presumes that *Nicholas* was based on § 701(a)(2):

> We recognized in *Nicholas* that even when regulations accord an agency "wide discretion" in making certain determinations, the agency's exercise of discretion may still be subject to review under § 701(a)(2) if there are meaningful and judicially manageable standards for evaluating its decisions.

*Id.* at n. 10.

*Mada–Luna,* therefore, presumes that both *Romeiro De Silva* and *Nicholas* were based on § 701(a)(2), even though neither case discussed that provision. Indeed, if both cases relied on § 701(a)(2) as posited by *Mada–Luna,* the law in this Circuit is in disarray: *Nicholas* (according to *Mada–Luna*) held that deferred action decisions might be reviewable under § 701(a)(2) while *Romeiro De Silva* (according to *Mada–Luna*) held that review was blocked by that same provision.

The problem in the Ninth Circuit is that no court has directly confronted the issue faced in the present case. The discussion in *Mada–Luna* was dicta. *Romeiro De Silva* and *Nicholas* never discussed § 701(a)(2) and the established line of cases interpreting that section. Finding little to rely upon in the Ninth Circuit, the Court turns to Supreme Court decisions concerning § 701(a)(2). In *Heckler v. Chaney, supra,* the Supreme Court has indicated that an agency refusal to act will usually create a presumption of unre-

viewability. That presumption disappears, however, when the agency's "coercive power over an individual's liberty" is at stake, as it is here. *Id.,* 470 U.S. at 832, 105 S.Ct. at 1656. Under these circumstances, the Court is directed by *Chaney* to determine whether there is a "meaningful standard against which to judge the agency's exercise of discretion" in denying an extension of the voluntary departure date.

If one begins with the initial decision to grant or deny voluntary departure status, there is obviously a "meaningful standard" because such decisions are routinely subject to judicial review under the "arbitrary and capricious" test. *E.g., Cunanan v. INS,* 856 F.2d 1373 (9th Cir.1988). One such standard that enters into the review of a decision to deny voluntary departure status is whether the petitioner has shown "good moral character" for the five years preceding his petition. 8 U.S.C. § 1254(e). The phrase "good moral character" is defined in 8 U.S.C. § 1101 as a person who is not a habitual drunkard, gambler, perjurer, murderer, ex-convict, or other specifically defined undesirable. The Ninth Circuit has held that to obtain voluntary departure, the petitioner must carry "the burden of demonstrating both statutory eligibility and equities to merit the favorable exercise of discretion." *Villanueva–Franco v. INS, supra.* Thus, a petitioner who lived with his wife and son—both United States citizens—and worked at a respectable job was nevertheless denied voluntary departure status because of many drunk driving convictions and other misdemeanors. *Id.* at 330. The Service found that his family ties and job were "favorable equities" but that his criminal record outweighed all else. The Circuit agreed and found no abuse of discretion. *Id.* at 330. In another Ninth Circuit action, a denial of voluntary departure status was upheld where the petitioner had a prior embezzlement conviction. *Delgado–Chavez v. INS,* 765 F.2d 868 (9th Cir.1985).

This review shows that there are "meaningful standards to apply" to determine if a Service decision denying voluntary departure status is arbitrary and capricious. It is a very small step to apply these same judicially manageable standards to review a District Director's decision concerning extension of voluntary departure status. Thus, under *Chaney,* this Court has the power to determine whether the District Director's decision was arbitrary and capricious under 5 U.S.C. § 706(2)(A).

■ Because this matter is in the posture of a motion for preliminary injunction, the Court need not make a full review of the District Director's decision at this point. Instead, the Court must determine the balance of equities and the plaintiffs' chance of success on the merits to determine if they are entitled to a preliminary injunction. In the Ninth Circuit, plaintiffs have the burden of showing either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in their favor. *Los Angeles Memorial Coliseum Com'n v. Nat'l Football League,* 634 F.2d 1197 (9th Cir.1980). These are not separate tests, but the outer reaches of a single continuum. *Id.* at 1201. The critical element in determining the test to be applied is the relative hardship to the parties. *Republic of the Philippines v. Marcos,* 862 F.2d 1355 (9th Cir.1988). If the balance of harm tips decidedly toward the movants, then the movants need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. *Id.* at 1362.

■ In this case, the equities tip decidedly toward the plaintiffs. The District Director's refusal to extend the voluntary departure date means that this family will be broken up, with the mother and two sons being separated from the father and infant son. With regard to the merits of the case, the plaintiffs have—according to the present record—led an upstanding life for the last six years with no criminal charges or inappropriate behavior to mar their record. The children are at a young age where they particularly need their parents and would suffer immensely from any separation. In addition, one of the children has an Attention Deficit Disorder that requires treatment with drugs. Because the equities tip decidedly toward the plaintiffs and they have raised serious questions on the merits, the Court will grant the preliminary injunction restraining deporta-

tion. The Court will deny the Government's motion to dismiss for lack of jurisdiction and further finds that the motion to rescind temporary restraining order is moot because the Court will replace the temporary restraining order with a preliminary injunction.