Carol GUERRERO–JIRON, Petitioner,

v.

Thomas J. SCHILTGEN, District Director, U.S. Immigration & Naturalization Service, Respondent.

No. C 96–0811 SBA.

United States District Court,
N.D. California.

March 19, 1996.

Robert S. Tilles, Law Office of Robert S. Tilles, Sacramento, CA, for petitioner.

Derrick K. Watson, Assistant U.S. Attorney, U.S. Attorney's Office, San Francisco, CA, for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ARMSTRONG, District Judge.

Petitioner brings the above captioned action seeking a stay of deportation until September 4, 1997. Having read and considered the papers submitted by the parties, and being fully informed, the Court DENIES the petition for a writ of habeas corpus.

## BACKGROUND

Petitioner is a native and citizen of Nicaragua. She is presently living in this country with her husband, who is also a citizen of Nicaragua, and their five children, four of whom are United States citizens. She last entered the country illegally on August 13, 1989. On August 15, 1989, the Immigration and Naturalization Service ("INS") issued an order to show cause why she should not be deported. Petitioner conceded deportability, but sought political asylum. On April 25, 1991, her petition for asylum was denied. She made a timely appeal to the Board of Immigration Appeals ("BIA"), and then to the Ninth Circuit, each of which denied her claim.

Petitioner was ordered to surrender for deportation on March 4, 1996. On February 22, 1996, she applied to the INS District Director ("DD") for a stay of deportation, and for deferred action. The Deputy District Director ("DDD") denied her application for these discretionary remedies in a four page written decision dated March 4, 1996.

On March 4, 1996, petitioner filed the instant petition seeking review of the DDD's decision. Petitioner asserts that the DDD abused his discretion by not granting her either a stay of deportation or "deferred action" status. The government opposes her petition and argues that the DDD's decision to deny a stay of deportation was not an abuse of discretion. The government also asserts that the Court lacks jurisdiction to review the decision not to grant "deferred action" status.

## DISCUSSION

### I. Denial of Motion for Stay

#### A. Legal Standard

■ "The district court has jurisdiction on a petition for writ of habeas corpus to review both the BIA denial and the District Director's denial of requests to stay deportation." *Butros v. INS*, 804 F.Supp. 1336, 1339 (D.Or.1991) (*citing Dhangu v. INS*, 812 F.2d 455, 459 (9th Cir.1987)). A denial of a request for a stay of deportation is reviewed for abuse of discretion. *Blancada v. Turnage*, 883 F.2d 836, 838 (9th Cir.1989).

■ "The stay may not be denied arbitrarily, irrationally, or contrary to law. 'Cursory, summary, or conclusory statements are inadequate.' When a request for a stay is denied, the ruling body must give reasons for its decision that demonstrate that it has fully considered the request." *Butros*, 804 F.Supp. at 1339 (*quoting Batoon v. INS*, 707 F.2d 399, 401 (9th Cir.1983)) (internal citations omitted).

#### B. Application

■ The DDD's four-page single-spaced denial of petitioner's request for a stay adequately sets forth the reasons for the decision to deny discretionary relief in this case. It is wholly unlike the "merely conclusory" decisions which have been found to constitute an abuse of discretion. *E.g., Butros v. INS*, 804 F.Supp. at 1338 ("The BIA decision is inadequate because it is merely conclusory.... The BIA stated only that it considered the application for a stay and concluded that there was little likelihood of success on the merits of the motion to reopen. The BIA offered no reasoning or analysis whatsoever.").

Petitioner argues that the DDD conclusion that petitioner has "abused the immigration laws ... by pursuing meritless litigation" is arbitrary and baseless. This is somewhat of a mischaracterization of the DDD's findings. The DDD states that the "applicant has abused the immigration laws and prolonged her stay in the United States for several years by pursuing meritless litigation." (DDD Decision at 2.) While petitioner's argument is a plausible interpretation of the DDD Decision, it is equally plausible that the DDD was referring to petitioner's illegal entry as an abuse of the immigration laws and her litigation as merely a vehicle for prolonging her stay.

The petitioner has only pursued one claim, her claim for asylum. While she was ultimately unsuccessful in that claim, no court has found that her claim was frivolous. However, as she ultimately did not prevail, it can be characterized, with hindsight, as without merit.

Petitioner also argues that the DDD failed to consider petitioner's daughter Yuriko's full medical history. A review of the DDD's Decision demonstrates that he did in fact consider that history. The DDD, however, considered the records which were provided to be dated, and noted that the evidence presented does not demonstrate that Yuriko is currently receiving treatment.

■ Petitioner contends that the DDD's statement that Yuriko's condition is not life-threatening is "ghoulish, irrational, and morally reprehensible ..." There is no suggestion in the DDD's decision that a medical condition must be life threatening to warrant relief; the DDD properly listed this factor as one which he considered. Further, the DDD has discretion in this matter—the Court is only empowered to determine if that discretion was exercised, not to weigh the morality of the ultimate decision.

Petitioner asserts that the DDD failed to note a letter from the Consul General of Nicaragua stating that adequate medical care is unavailable in that country. However, given the DDD's conclusion that the petitioner's daughter is not currently in need of medical care, this omission is not sufficient to constitute a breach of discretion. Petitioner also asserts that the DDD has suggested that "little Yuriko should have to leave the United States and join her mother, if deported, to obtain medical treatment in Nicaragua." The DDD's Decision suggests no such thing. The DDD merely states that the doctor's letters do not state whether Yuriko could receive medical care in Nicaragua "should she later join her mother there." This in no way suggests that the DDD believes that Yuriko, a United States citizen, should be deported.

It is clear that the DDD did consider Yuriko's medical condition, but concluded that it was not a sufficient ground to warrant the exercise of his discretion. The Court notes that Yuriko is not at risk of deportation; if medical care is unavailable in Nicaragua, then Yuriko should not accompany her mother there. While petitioner's deportation will undoubtedly force her to make choices that will result in hardship no matter what decision is made, her situation is no different than that of many deportable aliens with United States citizen children.

Petitioner argues that the DDD failed to consider the financial impact of her deportation on her husband and children in this country. The DDD stated that he took this factor into consideration, and concluded that petitioner could find employment in Nicaragua. While this conclusion does not specifically address petitioner's argument, petitioner can help defray child care costs by sending money from Nicaragua.

The DDD concluded that much of the hardship which deportation will cause is a result of the petitioner's efforts to remain in this country since being ordered to deport in 1989. Petitioner argues that it is "unreasonable, unconscionable, and wholly irrational to suggest that an individual's legal right to employ the judicial system is the cause of personal and financial hardship." The Court disagrees. The DDD could have reasonably concluded that petitioner would not suffer the hardships of deportation if she had either not entered the country illegally in the first place, or had departed the country when ordered to do so. While petitioner had the right to resist deportation, it is not illogical for the DDD to recognize the consequences of that decision.

The DDD noted that the petitioner has previously failed to depart the country when given the chance to do so, and that he was not willing to place her on deferred action status. Accordingly, the DDD decided that a stay of deportation was not warranted.

The petitioner is only seeking to remain in the country until September 4, 1997, at which time Yuriko will be almost three years old. If the decision whether or not to grant the relief she is seeking were vested in this Court, the Court may well reach a different conclusion than the DDD. The Court notes that the DDD's decision is relatively unsympathetic to petitioner's plight. However, the Court cannot find that the DDD's decision was arbitrary. Accordingly, Ms. Guerrero–Jiron's petition for a writ of habeas corpus on this ground is DENIED.

## II. Denial of Request for "Deferred Action"

INS Operating Instruction No. 242.1a(22) provides that a district director may defer action in a given case—"an act of administrative choice to give some cases lower priority and in no way an entitlement". The DDD declined to recommend the petitioner for this status.

This Operating Instruction confers no rights to an otherwise deportable alien. *See Romeiro de Silva v. Smith,* 773 F.2d 1021, 1024 (9th Cir.1985) (discussing identical language of INS O.I. No. 103.1(a)(ii)). The district court has no jurisdiction to review a District Director's denial of this relief. *See Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1011 (9th Cir.1987); *Romeiro de Silva,* 773 F.2d at 1025. Accordingly, Ms. Guerrero–Jiron's petition for writ of habeas corpus on this ground is DENIED.

### CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT petitioner's Petition for Writ of Habeas Corpus is DENIED.

IT IS SO ORDERED.